A09A0802. GOOLSBY v. THE STATE.
(682 SE2d 671)

BERNES, Judge.

A Newton County jury convicted Terry Lee Goolsby of rape, aggravated sodomy, kidnapping, burglary, and misdemeanor sexual battery. On appeal from the denial of his amended motion for new trial, Goolsby contends that there was insufficient evidence to convict him.[1] We disagree and affirm.

> Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier

---

[1] Although the jury also convicted Goolsby of false imprisonment, the trial court did not enter a judgment of conviction on that count, but merged it with the conviction for kidnapping. "We need not consider an enumeration of error which addresses the sufficiency of the evidence to convict on a count on which the trial court failed to enter judgment." (Citation and punctuation omitted.) *Nelson v. State*, 277 Ga. App. 92, 96 (1) (b) (625 SE2d 465) (2005).

of fact to find the defendant guilty of the charged offense[s] beyond a reasonable doubt.

(Citations and punctuation omitted.) *Neugent v. State*, 294 Ga. App. 284, 285 (1) (668 SE2d 888) (2008). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*The Newton County Case.* Viewed in favor of the verdict, the evidence adduced at trial showed that the female victim lived alone in an apartment located in Newton County. In the early morning hours of February 28, 2002, the victim awoke to a "loud knocking, clanging noise." The victim went to the living room area to check on the noise and noticed that the door to the closet containing the water heater was slightly ajar. At that point, a young black male in a hooded sweatshirt jumped out of the closet and began struggling with the victim. During the struggle, the hood of the man's sweatshirt came off, and the victim was able to see his face. The man told the victim that he had a knife and warned her to stop struggling or he would cut her, and she complied. Holding her in a "bear hug," the man forced the victim back to her bedroom and put her on the bed in a face-down position. After blindfolding her and while restraining her, the man performed oral sex on the victim, fondled her left breast, and had intercourse with her.

Following the sexual assault, the man led the blindfolded victim out of the bedroom to the front door of the apartment and made her unlock the front door. He then forced the victim into the bathroom, had her kneel down at the toilet, and told her to count to 20 before getting up. The victim later testified that while standing in the bathroom, the man's demeanor suddenly changed, he began acting "somewhat polite," and he apologized to her before fleeing from the apartment.

When she had finished counting and the man had exited the apartment, the victim called 911 and reported that she had been raped. A sheriff's deputy arrived at the apartment a few minutes later. After speaking with the victim, the deputy located a hole in the ceiling of the water heater closet that was large enough for a man to fit through. A detective with the sheriff's department then arrived and had the victim provide a written statement describing the perpetrator and what had occurred. As part of his investigation, the detective collected the victim's clothing and the bed linens from the bed where the attack had taken place for DNA analysis. The detective also climbed through the hole in the water heater closet and up into the common attic area of the apartment building. From the vantage point of the attic, the detective was able to determine that the perpetrator had entered the attic through a separate hole found in the ceiling of a storage closet located outside the next-door

neighbor's apartment.

The victim's next-door neighbor was Goolsby, a 19-year-old male who lived with his girlfriend. The victim had never met Goolsby. During the investigation of the attack, Goolsby was standing outside of his apartment with his girlfriend, and he was holding a baseball bat. He gave a written statement to the deputy indicating that he had heard noises coming from his apartment as well. Goolsby admitted that the storage closet with the hole in the ceiling belonged to him but claimed that the door to the closet had been locked. The detective who examined the door to the storage closet, however, saw that the door was "wide open" and that there was no damage to the door or any signs of forced entry.

After the initial investigation was completed and the victim was exiting from her apartment to go to the hospital, Goolsby approached the victim in the hallway. Goolsby placed his hand on the victim's shoulder, told her that he was sorry about what had happened, and said that he planned to move out of the apartment complex. While he did not have on a hooded sweatshirt, he was of the same race and height as the perpetrator. The victim, who was "in a state of shock at that time" and was "focusing more or less on the ground . . . rather than any other place," did not recognize Goolsby as the perpetrator.

A rape kit was performed on the victim after she arrived at the hospital, and the following day the victim worked with a forensic sketch artist who prepared a sketch of the perpetrator that "looked really close." Although no male DNA was obtained from the rape kit, forensic testing of the bed linens from the victim's apartment revealed male DNA from an unknown individual.

*The Gwinnett County Cases.* After the attack, Goolsby moved to a mobile home park in Gwinnett County. In September 2002, S. P., an elderly woman who lived alone in the same mobile home park, was raped by a young man who broke into her home in the middle of the night. S. P. had walked into the kitchen to see if something was wrong after hearing suspicious noises, and the man had grabbed her and forced her into another room, where he raped her. The young man was of the same race, height, and build as the perpetrator in Newton County. Similarly, he acted polite and made apologetic statements after he attacked S. P. and before fleeing from the home. As part of the investigation, a rape kit was performed on S. P., and unknown male DNA was discovered from vaginal swabs obtained as part of the kit.

In December 2002, M. M., another woman who lived in the same mobile home park, was raped by a young man meeting the same physical description as in the prior two cases. Although M. M. had never met him, Goolsby lived in the mobile home across the street from her. M. M. had awoken in the middle of the night after hearing

a loud noise and had gotten up to investigate. The man, who was wearing a hooded sweatshirt, jumped out of a utility closet, threatened and stabbed M. M. with a knife, and forced her to the bedroom, where he raped her. Similar to the prior cases, the man's demeanor changed after the rape and he apologized to M. M. The man also warned M. M. not to go to a local hospital for treatment but instead to go to Newton General Hospital. Following the attack, unknown male DNA was discovered from vaginal swabs obtained as part of the rape kit performed on M. M., and fingerprints were lifted from a glass in M. M.'s home that the man had touched.

*The Joint Investigation.* A search of a national database of DNA profiles known as the Combined DNA Index System ("CODIS") revealed that the same male DNA profile was present in all three rape cases. In January 2003, a detective who was cross-checking names gathered as part of the investigations of the three cases discovered that Goolsby had lived in the Newton County apartment complex and then at the Gwinnett County mobile home park at the time of the respective rapes. He also met the physical description of the perpetrator given by the women.

Goolsby agreed to speak with the detective on two separate occasions after being informed of his *Miranda*[2] rights. In the first interview, Goolsby cried, shook, and was nervous. When questioned about the rapes, Goolsby was vague in his responses and said that he "was pretty sure that he didn't do it." In the second interview, Goolsby, who again was shaky and upset, told the investigator that "there was another side to him, that he needed to talk to someone so badly."

After procuring a search warrant, the detective obtained a sample of Goolsby's blood. Forensic testing of the blood sample at the state crime lab revealed that Goolsby's DNA matched the DNA profile of the perpetrator in all three rape cases. A crime scene technician also analyzed the fingerprints lifted from the glass in M. M.'s home and determined that they matched Goolsby's fingerprints. Additionally, M. M. participated in a live lineup identification and picked out Goolsby as the person who had raped her.

*The Newton County Trial.* Goolsby was indicted in the Newton County case on charges of rape, aggravated sodomy (based on the forced oral sex performed on the victim), kidnapping, burglary, and misdemeanor sexual battery (based on the fondling of the victim's left breast). At trial, the state presented the sketch of the perpetrator prepared by the forensic sketch artist, the forensic DNA evidence, and the testimony of the victim, the responding deputy, and the

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

responding detective, among others, concerning the attack and the subsequent investigation. Testimony and forensic evidence concerning the Gwinnett County rapes were admitted as similar transactions. This included testimony from S. P. and M. M. in which they identified Goolsby as their rapist.[3] In turn, Goolsby called his girlfriend as a witness, who testified that on the night of the Newton County attack, Goolsby woke her up claiming that he heard noises. According to the girlfriend, she then heard a noise in the attic, but she conceded that at that point the police were already outside the apartment complex, meaning that the noise could have come from the detective climbing through the attic as part of his investigation. Finally, Goolsby testified that he had never been in any of the three women's homes and that he was not the perpetrator of the attacks.

After listening to the testimony and reviewing the forensic evidence, the jury convicted Goolsby on all counts. The trial court denied his amended motion for new trial raising the general grounds. This appeal followed.

Based on the evidence discussed above, a rational jury was authorized to find Goolsby guilty beyond a reasonable doubt of rape, aggravated sodomy, kidnapping, burglary, and misdemeanor sexual battery. *Jackson*, 443 U. S. 307. See OCGA §§ 16-5-40 (a) (kidnapping);[4] 16-6-1 (a) (1) (rape); 16-6-2 (a) (2) (aggravated sodomy); 16-6-22.1 (b), (c) (misdemeanor sexual battery); 16-7-1 (a) (burglary). Goolsby, however, contends that there was insufficient evidence identifying him as the perpetrator in the Newton County case.[5] He emphasizes that the victim was unable to identify him as the perpetrator when he approached her in the apartment hallway when she was being taken to the hospital, and he contends that his

---

[3] The videotaped trial deposition of S. P., which was conducted in the presence of Goolsby and involved questioning by both the state and defense counsel, was introduced in lieu of calling S. P. as a live witness because she was too infirm to attend the trial. See OCGA §§ 24-10-130 (b) (4); 24-10-135; *Austin v. State*, 275 Ga. App. 560, 560-561 (1) (621 SE2d 546) (2005). During the deposition, S. P. pointed out Goolsby as the man who raped her.

[4] The General Assembly recently amended the kidnapping statute to address the asportation element of that offense, but the amendments do not apply in this case. See House Bill No. 575 (effective date July 1, 2009). See also *State v. McCabe*, 239 Ga. App. 297, 298-299 (519 SE2d 760) (1999) (statutory amendments that affect substantive rights do not apply retroactively).

[5] Although not specifically raised by Goolsby, we note that the asportation element of the kidnapping charge was met when he forced the victim into the bathroom before exiting the apartment. While the movement of the victim into the bathroom was of minimal duration, it was not an inherent part of the sexual crimes committed in the bedroom, but rather occurred after those crimes had already been completed. Accordingly, the element of asportation was established beyond a reasonable doubt. See *Henderson v. State*, 285 Ga. 240, 244-245 (5) (675 SE2d 28) (2009) (asportation sufficiently proven by evidence that the victims were moved after the armed robbery had been committed); *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008) (enunciating standard for determining the sufficiency of evidence of asportation).

girlfriend testified that she clearly remembered that he was at home during the attack of the victim.

We are unpersuaded. As an initial matter, we note that the responding detective testified that the victim was in shock and was focusing on the ground in front of her when Goolsby approached her in the hallway, and Goolsby's girlfriend never testified that he was at home at the time of the attack. But in any event, "[t]his Court does not weigh the evidence or assess witness credibility, and we will not second-guess what evidence the jury chose to believe as long as there is some competent evidence on each element necessary to prove the state's case, as there clearly was here." (Citation and punctuation omitted.) *Johnson v. State*, 275 Ga. App. 161, 162 (620 SE2d 433) (2005). Goolsby's DNA was found in the victim's bed linens. The state also introduced the sketch of the perpetrator prepared by the forensic sketch artist, evidence of the close physical proximity of Goolsby's apartment to that of the victim, and evidence linking his storage closet to the attack. Goolsby's own statements during his two interviews with the detective also could be construed as showing consciousness of guilt. Finally, the state presented the similar transaction evidence proving that Goolsby committed the two rapes in Gwinnett County at the mobile home park where he moved after the Newton County attack, evidence that showed his modus operandi, course of conduct, and bent of mind. See, e.g., *Clark v. State*, 280 Ga. 899, 900 (2) (635 SE2d 116) (2006); *Lamb v. State*, 293 Ga. App. 65, 66-67 (666 SE2d 462) (2008); *Thomas v. State*, 273 Ga. App. 357, 360 (2), n. 7 (615 SE2d 196) (2005). Notwithstanding his argument to the contrary, the evidence of Goolsby's identity clearly was sufficient to link him beyond a reasonable doubt to the charged crimes. See *Jackson v. State*, 226 Ga. App. 604, 606 (2) (487 SE2d 142) (1997).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 23, 2009.

*Teresa L. Smith*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Layla H. Zon, Assistant District Attorney*, for appellee.