S11A1617. HATLEY v. THE STATE.
(722 SE2d 67)

THOMPSON, Justice.

Appellant Johnny Martin Hatley was convicted of aggravated child molestation, aggravated sodomy, and two counts of sexual battery against a person under sixteen.[1] He appeals, asserting, inter alia, the "Child Hearsay Statute," OCGA § 24-3-16, is unconstitu-

---

[1] The crimes occurred on April 4, 2009. Appellant was indicted on September 16, 2009, and charged with three counts of aggravated child molestation, three counts of aggravated sodomy, and three counts of sexual battery. Trial commenced on March 29, 2010, and the jury returned its verdict on April 2, 2010, finding appellant guilty of one count of aggravated child molestation in that appellant put his mouth on the victim's vagina, one count of aggravated sodomy in that appellant performed a sexual act involving the mouth of appellant and the victim's vagina, and two counts of sexual battery in that appellant intentionally made physical contact with the victim's genital area and with the victim's inner thighs. The jury acquitted appellant of one count of aggravated child molestation predicated on conduct involving appellant's penis and the victim's mouth, one count of aggravated child molestation alleging appellant put his mouth on the victim's anus, one count of aggravated sodomy involving appellant's sex organ and the victim's mouth, one count of aggravated sodomy involving appellant's mouth and the victim's anus, and one count of sexual battery alleging that appellant intentionally made physical contact with the victim's anus. The trial court sentenced appellant on April 15, 2010, to concurrent life terms for the aggravated child molestation and aggravated sodomy counts predicated on conduct involving appellant's mouth and the victim's vagina, and two consecutive five-year terms for the sexual battery counts alleging the intentional touching of the victim's vagina and inner thighs. Appellant's timely filed motion

tional because it violates the Confrontation Clause. Finding no reversible error, we affirm.

Viewing the evidence in a light favorable to the verdict, as we are bound to do, we find the following: Hatley approached C. C., the three-year-old victim, her mother and younger sister, late on a cold evening in April 2009. Because the family was homeless, Hatley offered to pay for a motel room, and C. C.'s mother, having seen Hatley previously at a church, accepted the offer. After Hatley and the family were settled in the motel, C. C.'s mother left Hatley with her children while she walked to a store to find a bottle for her younger child. When she returned to the room, she observed Hatley on the bed bending over C. C., who was in the fetal position, with her pants and underclothes pulled down.

C. C.'s mother pushed Hatley away and asked "what the [expletive] you doing?" Hatley responded that he was helping C. C. pull up her pants after she used the bathroom. C. C.'s mother rhetorically asked Hatley why he needed to place C. C. on the bed to pull her pants up. Then, knowing that C. C. could pull up her own pants, C. C.'s mother asked C. C. what had happened. C. C. responded: "mama, he sucked me." At that point, C. C.'s mother phoned 911, but Hatley forced her to hang up and ordered her to leave. As the family left, police arrived in response to the disconnected 911 call. Hatley was still at the motel. Three police officers briefly interviewed C. C., who told them that Hatley "sucked" her. When police asked where, she pointed to her vagina. She also told one of the officers that Hatley "kissed" her in the bathroom, and put his "pee-pee" in her mouth. Hatley denied that he touched C. C. or put her on the bed.

C. C. was taken to a hospital, where a sexual assault examination revealed the presence of male saliva on her vagina. A few weeks later, C. C. was interviewed by a forensic interviewer. She told the interviewer that a man "gave her a kiss on the bed" and "sucked" her vagina and buttocks, adding that it "hurt."

At trial, Hatley testified that he never touched C. C. As for the presence of male saliva on C. C.'s vagina, Hatley explained that he dumped a half cup of his saliva into the toilet shortly before C. C. went to use the bathroom. He added that C. C. failed to realize Hatley left the seat up and she fell into the toilet.

At trial, C. C.'s mother, the police officers, and the forensic interviewer were permitted to testify as to what C. C. told them. C. C.

for new trial was denied on October 29, 2010. Appellant filed a notice of appeal on November 18, 2010. The appeal was docketed in this Court for the September term, and submitted for decision on the briefs.

was in the courthouse and available to testify; however, she was not called to the witness stand by the prosecution. Hatley contends the trial court erred in failing to declare the Child Hearsay Statute unconstitutional, and to require the State to present C. C. as a witness. He also contends that the trial court erred in permitting the hearsay statements made by C. C. and her mother to police and the forensic interviewer in violation of his right of confrontation.

We agree with Hatley that the Child Hearsay Statute does not, as construed in previous cases and as applied in this case, comport with the requirements of the Confrontation Clause. However, the right of confrontation can be satisfied by construing the statute to require pretrial notice of the State's intent to use a child victim's hearsay statements; thus, we will construe the statute in that way.

## I.

### Constitutionality of the Child Hearsay Statute

Hatley contends the trial court should have ruled OCGA § 24-3-16 unconstitutional. The statute reads:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

Previously, this Court examined OCGA § 24-3-16, and construed it so as to require the trial court (1) at the request of either party, to cause a child molestation victim to take the stand before the State rests; and (2) to inform the jury that the court called the child as a witness. *Sosebee v. State*, 257 Ga. 298 (357 SE2d 562) (1987). This way, our Court opined, jurors would not begrudge the defendant for forcing a child victim to take the witness stand and undergo cross-examination. Id.

Relying upon *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), and *Melendez-Diaz v. Massachusetts*, 557 U. S. 305 (129 SC 2527, 174 LE2d 314) (2009), Hatley argues that the statute violated his right to confront his accuser because the prosecution had an affirmative duty to present C. C. at trial, not just bring her to the courthouse, when the prosecution introduced her out-of-court statements.

*Crawford* "held that the admission of out-of-court statements

that are testimonial in nature violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. [Cit.]" *Pitts v. State*, 280 Ga. 288 (627 SE2d 17) (2006). The Supreme Court "refused to define 'testimonial,' but expressly stated that the term did apply, inter alia, to 'police interrogations.' [Cit.]" *Watson v. State*, 278 Ga. 763, 768 (2) (b) (604 SE2d 804) (2004). Thus, this Court has held that testimonial statements generally "include statements made by witnesses to government officers investigating a crime. [Cits.]" *Lindsey v. State*, 282 Ga. 447, 452 (4) (651 SE2d 66) (2007).

Some of the Confrontation Clause issues left unanswered by *Crawford* were clarified in *Melendez-Diaz*. There the Supreme Court held that the Confrontation Clause guarantees a criminal defendant the right to cross-examine experts who conduct laboratory tests introduced as evidence in his case. In so doing, the Court examined the Confrontation Clause in light of *Crawford* and declared that a "witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." Id. at 2531. The Court recognized that there are two classes of witnesses — those who testify against the defendant and those who testify in his favor — and concluded that "the prosecution *must* produce the former; the defendant *may* call the latter. . . . [T]here is not a third category of witnesses, helpful to the prosecution, but somehow immune from confrontation." Id. at 2534.

Given this language, we must conclude that the Child Hearsay Statute, as construed by this Court in *Sosebee*, supra, and in other appellate cases, cannot pass constitutional muster because it fails to put the onus on the prosecution to put the child victim on the witness stand to confront the defendant. Any cases suggesting the contrary are hereby overruled. See, e.g., *Williams v. State*, 290 Ga. App. 841, 842 (1) (660 SE2d 740) (2008); *Howell v. State*, 278 Ga. App. 634 (2) (629 SE2d 398) (2006); *Starr v. State*, 269 Ga. App. 466, 468 (2) (a) (604 SE2d 297) (2004). However, in light of *Melendez-Diaz*, we believe the statute can be construed to survive a Confrontation Clause attack.

The *Melendez-Diaz* court observed that "[t]he right of confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may adopt procedural rules governing the exercise of such objections." Id. at 2534, n. 3. Along these lines, the Court noted that pretrial notice situations could be used to satisfy the right of confrontation. Accordingly, we now interpret OCGA § 24-3-16, consistent with the demands of *Melendez-Diaz*, to require the prosecution to notify the defendant within a reasonable period of time prior to trial of its intent to use a child victim's hearsay statements and to give the defendant an opportunity to raise a Confrontation

Clause objection. If the defendant objects, and the State wishes to introduce hearsay statements under OCGA § 24-3-16, the State must present the child witness at trial; if the defendant does not object, the State can introduce the child victim's hearsay statements subject to the trial court's determination that the circumstances of the statements provide sufficient indicia of reliability. The trial court should take reasonable steps to ascertain, and put on the record, whether the defendant waives his right to confront the child witness.[2]

## II.

### The Hearsay Statements and the Confrontation Clause

Even though we now construe the statute so as to satisfy the confrontation clause, we must nevertheless examine the hearsay statements introduced against Hatley and determine whether his right of confrontation was violated by the introduction of the hearsay statements. In undertaking this task, we again turn to *Crawford* and its progeny, particularly *Davis v. Washington*, 547 U. S. 813 (126 SC 2266, 165 LE2d 224) (2006), and *Michigan v. Bryant*, ___ U. S. ___ (131 SC 1143, 179 LE2d 93) (2011). We note, too, that when hearsay evidence is erroneously admitted in violation of the Confrontation Clause, the error can be deemed harmless beyond a reasonable doubt where the hearsay is cumulative of other admissible evidence. *Gay v. State*, 279 Ga. 180, 182 (611 SE2d 31) (2005). See also *Vaughn v. State*, 248 Ga. 127, 131 (281 SE2d 594) (1981) (constitutional error notwithstanding, conviction will be affirmed where error is harmless beyond a reasonable doubt).

In *Davis*, the Supreme Court was concerned with whether statements made in the course of a police investigation were testimonial or nontestimonial, and concluded:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or

---

[2] These general guidelines will assure that a defendant's right to confront his accuser will be protected until a more detailed procedure is provided by a Uniform Superior Court Rule (USCR) or statutory amendment. See generally *Chandler v. State*, 261 Ga. 402, 407-408 (405 SE2d 669) (1991) (providing general procedure permitting defendant to introduce evidence of act of violence by victim until curative procedure is incorporated in USCR).

prove past events potentially relevant to later criminal prosecution.

*Id.* at 822. In *Michigan v. Bryant*, the Supreme Court gave further guidance on this subject. The court referenced the "primary purpose" test, but cited additional factors to determine whether a statement was made to meet an ongoing emergency, including the nature of the emergency, the formality of the exchange, and the probable intent of the parties judged by an objective observer.

With these cases in mind, we conclude that C. C.'s statements to her mother were nontestimonial, whereas C. C.'s statement to the forensic interviewer, made several weeks after the crimes, was testimonial. The statements made by C. C. and her mother to police at the scene of the crime cannot be categorized easily because the moment when police neutralized any threat to the public is unclear. At any rate, we need not make that determination because even if C. C.'s statement to the forensic examiner, and the statements made by C. C. and her mother to the police were admitted erroneously, the errors were harmless beyond a reasonable doubt. See *Gay v. State*, supra. After all, C. C.'s statement to the forensic interviewer was the same as C. C.'s statement to her mother.[3] Moreover, the statements made by C. C. and her mother to police were cumulative of C. C.'s statement to her mother, as well as the mother's testimony and the forensic evidence properly admitted against Hatley.[4] Finally, we note that the other evidence against Hatley, who was the only male in the motel room and who admitted, indirectly, that his saliva was found on C. C.'s vagina, was overwhelming. See *Vaughn v. State*, supra at 131-132 (overwhelming evidence of "guilt can negate the possibility that the constitutional error contributed to the conviction").

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 6, 2012.

*Darrell B. Reynolds, Sr.*, for appellant.
*Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney*, for appellee.

---

[3] C. C. did not tell her mother that Hatley sucked her buttocks; that statement was made to the forensic interviewer only. However, Hatley was acquitted of the counts in the indictment predicated on that conduct. See n. 1, supra.

[4] Although C. C. told police, but did not tell her mother, that Hatley put his penis in her mouth, Hatley was acquitted of the counts predicated on that conduct. See n. 1, supra.