**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN , JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**April 10, 2013**

# In the Court of Appeals of Georgia

A13A0578. WHORTON v. THE STATE.

DILLARD, Judge.

Following a trial by jury, Glenn Whorton was convicted on one count each of child molestation and sexual battery of V. B., a minor.[1] On appeal, Whorton contends that (1) the trial court erred by refusing to conduct a pre-trial hearing as to the reliability of child-hearsay statements, (2) the trial court erred by admitting child-hearsay statements in violation of his Confrontation Clause rights, (3) the trial court erred by admitting inherently unreliable child-hearsay statements, and (4) the evidence against him was insufficient as it was based entirely upon inadmissible child-hearsay statements. For the reasons set forth *infra*, we affirm.

---

[1] The convictions merged for sentencing purposes.

Viewed in the light most favorable to the jury's guilty verdict,[2] the record reflects that Whorton is the boyfriend of the victim's aunt on her father's side. During the relevant time period in 2007, Whorton and V. B.'s aunt lived together with V. B.'s paternal grandmother in a two-bedroom trailer in Polk County. V. B., who was four years old at the time, frequently visited with her aunt and grandmother, often spending the night with them.

At this same time, V. B.'s mother began to notice that the child was behaving oddly. For example, despite being successfully potty-trained, V. B. began wetting herself on a regular basis. Additionally, she suddenly became afraid of the dark. And finally, she began masturbating and did so on such a frequent basis that her genitalia remained "constantly red." In response to this troubling behavior, V. B.'s mother inquired as to whether anyone was hurting her, to which the child responded in the negative.

In July or August of 2007, after V. B. masturbated with a soda can and caused significant irritation to her genitals, the mother again inquired if her daughter was being hurt or whether anyone had been "messing" with her. And while V. B. again denied that she was being hurt by anyone, she did ask her mother what she meant by

---

[2] *See, e.g.*, *Goolsby v. State*, 299 Ga. App. 330, 330 (682 SE2d 671) (2009).

someone "messing with her." After her mother explained what she meant by this line of inquiry, V. B. immediately responded with Whorton's first name, Glen, and stated that she had been touched by him "bunches of times" at both the trailer and in her aunt and grandmother's prior home. V. B. then detailed and demonstrated exactly how Whorton touched her by "rubbing her private area." And when her mother asked why she had not previously disclosed that she was being hurt by Whorton, V. B. responded that Whorton's actions had not hurt her but had instead felt good.

Thereafter, V. B.'s mother provided the child with an opportunity to tell her father what Whorton had done to her, but when the father failed to take any action to address the situation, V. B.'s mother took her daughter to law enforcement in September 2007. Around that same time, V. B. also underwent a forensic interview at a child-advocacy center.

In October of 2007, V. B.'s mother and father separated and the mother moved with her children, including V. B., to Alabama and lived with her boyfriend. V. B. was then enrolled in a preschool, and her teacher at the school observed the same disturbing behavior that concerned the mother—namely, that V. B. was wetting herself and masturbating regularly. Additionally, in April 2008, V. B. approached the mother's boyfriend and made an outcry that "Glen touches me." V. B. then

demonstrated the manner in which she had been touched by Whorton by placing her hand on her genital area and moving it around.

It was unclear whether V. B.'s disclosure to her mother's boyfriend referred to an old incident or to a new incident, but the disclosure was reported to the Alabama Department of Human Services, and V. B. underwent a second forensic interview by a child-advocacy center in Alabama. V. B. also began undergoing counseling through the Alabama child-advocacy center, and during her counseling sessions, she disclosed that Whorton had touched her genitals, which she referred to as her "tutu."

Thereafter, Whorton was indicted for committing the offenses of child molestation[3] and sexual battery.[4] Specifically, the indictment alleged that Whorton committed these offenses between June 1, 2007, and June 30, 2007, by touching V. B. upon her genitals. A jury convicted Whorton on both counts, and this appeal follows.

---

[3] Former OCGA § 16-6-4 (a) (2007) ("A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person.") (current version at OCGA § 16-6-4 (a) (1)).

[4] OCGA § 16-6-22.1 (b) ("A person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person.").

At the outset, we note that on appeal from a criminal conviction, we view the evidence "in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent."[5] And in evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but only determine "if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt."[6] Accordingly, the jury's verdict will be upheld so long as "there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[7] With these guiding principles in mind, we turn now to Whorton's enumerations of error.

1. In two separate enumerations of error, Whorton argues that the trial court erred in denying his request for a pre-trial hearing to determine the reliability of the child-hearsay statements and that the trial court erred in admitting the statements because they lacked sufficient indicia of reliability. We disagree.

---

[5] *Goolsby*, 299 Ga. App. at 330 (punctuation omitted).

[6] *Id.* at 330-31 (punctuation omitted).

[7] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

Whorton contends that due to, *inter alia*, the sheer number of child-hearsay statements at issue in this case, the trial court erred by failing to hold a *pre-trial* hearing as to the reliability of those statements pursuant to *Gregg v. State*.[8] The record reflects that Whorton filed motions in limine to exclude those statements and requested a pre-trial hearing, but the trial court denied the request for a separate pre-trial hearing and denied the motions in limine, finding that the statements at issue were reliable. Nevertheless, the trial court granted Whorton a continuing objection as to the child-hearsay statements.

At the conclusion of the State's evidence, Whorton moved for a directed verdict and again argued that the child-hearsay statements were unreliable. But the trial court denied the motion and again found that those statements were supported by the presence of sufficient indicia of reliability. And finally, the trial court likewise denied Whorton's motion for new trial on the same grounds.

Former OCGA § 24-3-16 provided as follows:

A statement made by a child under the age of 14 years describing any act of sexual contact . . . performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the

---

[8] 201 Ga. App. 238 (411 SE2d 65) (1991).

court finds that the circumstances of the statement provide sufficient indicia of reliability.[9]

It is well established that indicia of reliability must "spring from the circumstances of the statement"[10] and that the trial court may consider, *inter alia*, the following factors when making this determination:

> (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type

---

[9] OCGA § 24-3-16 (2010), *repealed by* Ga. Laws 2011, Act 52, § 2 (effective Jan. 1, 2013). OCGA § 24-8-820, which became effective January 1, 2013, contains language identical to that quoted above from former OCGA § 24-3-16, but the provisions of Georgia's new evidence code "apply to any motion made or hearing or trial commenced on or after" January 1, 2013. Ga. Laws 2011, Act. 52, § 101. Because Whorton's trial occurred before this date, the prior evidence code applies in the case *sub judice*.

[10] *Gregg*, 201 Ga. App. at 240 (3) (b) (emphasis omitted).

of language used therein; and (10) the consistency between repeated out-of-court statements by the child.[11]

Here, despite Whorton's argument that the trial court erred in denying his request for a pre-trial hearing to determine whether the statements at issue had sufficient reliability, there is no requirement in the child-hearsay statute that the court conduct such a hearing *prior* to receiving the relevant testimony.[12] Nor is there a requirement that the trial court "make a specific finding of sufficient indicia of reliability in order for the out-of-court statements of child victims to be admissible."[13] Indeed, the statutory requirement is met if "after both parties have rested, the record contains evidence which would support such a finding."[14] Thus, so long as sufficient

---

[11] *Id.*

[12] *Id.* (3) (a); *accord Henry v. State*, 316 Ga. App. 132, 136 (6) (729 SE2d 429) (2012); *Robinson v. State*, 308 Ga. App. 45, 47 (2) (a) (706 SE2d 577) (2011); *Phillips v. State*, 284 Ga. App. 224, 226 (1) (a) (644 SE2d 153) (2007).

[13] *Robinson*, 308 Ga. App. at 47 (2) (a) (punctuation omitted); *see also Henry*, 316 Ga. App. at 136 (6) ("[T]here is no requirement that a trial court make an explicit finding of sufficient indicia of reliability prior to the admission of the child's out-of-court statements."); *Phillips*, 284 Ga. App. at 227 (1) (a) ("[T]he trial court need not make an express finding that the circumstances of the statement at issue provide sufficient indicia of reliability before admitting the statement . . . .").

[14] *Gregg*, 201 Ga. App. at 239 (3) (a) (punctuation omitted); *accord Phillips*, 284 Ga. App. at 227 (1) (a).

evidence of indicia of reliability "appears in the record either before or after the introduction of the child's out-of-court statements, the fair trial rights of the defendant are adequately protected."[15]

In the case *sub judice*, Whorton argues that the trial court erred in denying him a pre-trial *Gregg* hearing, relying on this Court's decision in *Ferreri v. State*[16] for the proposition that a *pre-trial* hearing is *required* in some cases. But *Ferreri* cannot possibly stand for such a proposition. Indeed, our Supreme Court explicitly held in *Reynolds v. State*[17] that it was merely "advisable in some situations" to hold a hearing to determine whether a child-hearsay statement has sufficient indicia of reliability.[18] Suffice it to say, "advisable"[19] can in no way be understood to mean "required."[20] And because vertical *stare decisis* dictates that we faithfully adhere to the precedents

---

[15] *Gregg*, 201 Ga. App. at 240 (3) (a) (punctuation omitted).

[16] 267 Ga. App. 811 (600 SE2d 793) (2004).

[17] 257 Ga. 725 (363 SE2d 249) (1988).

[18] *Id.* at 726 (2).

[19] *See* THE COMPACT OXFORD ENGLISH DICTIONARY 22 (2nd ed. 1991) (defining "advisable" as meaning, *inter alia*, "recommended, expedient, prudent").

[20] *See* THE COMPACT OXFORD ENGLISH DICTIONARY 1565 (2nd ed. 1991) (defining "require" as meaning, *inter alia*, "to demand as necessary or essential on general principles, or in order to comply with or satisfy some regulation").

9

established by the Supreme Court of Georgia,[21] we flatly reject Whorton's invitation to read our decision in *Ferreri* in a manner that undermines or is inconsistent with our Supreme Court's holding in *Reynolds*.[22]

And while it is certainly true that some of the language employed by this Court in *Ferreri* is less than precise, the fundamental error made by the trial court in that case was in failing to make its decisions on the admissibility of certain child-hearsay statements "outside the hearing of the jury, so that improperly admitted hearsay evidence [did] not contaminate the remainder of the trial,"[23] not in failing to hold a

---

[21] *See* GA. CONST., art. VI, § VI, ¶ VI (1983) ("The decisions of the Supreme Court shall bind all other courts as precedents."); *State v. Smith*, 308 Ga. App. 345, 352 (707 SE2d 560) (2011) ("[T]he doctrine of stare decisis prohibits this Court from ignoring the valid precedent of a higher court."); *State v. Jackson*, 287 Ga. 646, 658 (5) (697 SE2d 757) (2010) ("Stare decisis is an important principle that promotes the rule of law . . . ."); see also Kurt T. Lash, *Originalism, Popular Sovereignty, and Reverse Stare Decisis*, 93 VA. L. REV. 1437, 1454 (2007) (noting that "[v]ertical stare decisis refers to the binding effect of precedent on lower courts," and that "[s]erious rule of law costs would follow if lower courts were free to ignore precedent established by a higher court of appeal").

[22] Whorton's suggestion that we supplant our Supreme Court's decision in *Reynolds* with *Ferreri* is done by characterizing this Court's holding in *Ferreri* as a "significant clarification" of *Reynolds*. This Court is not, of course, at liberty to "clarify" a Supreme Court decision in a manner that is fundamentally at odds with the holding of that case.

[23] 267 Ga. App. at 814.

10

pre-trial hearing. To be sure, the facts in *Ferreri* were such that the trial court perhaps *should have*, as a prudential matter, held a pre-trial hearing on the child-hearsay statements at issue. Put another way, the trial court's failure to hold a pre-trial hearing in *Ferreri* was "no way to run a railroad." Nevertheless, to the extent that our decision in *Ferreri* can possibly be read as *requiring* a pre-trial *Gregg* hearing in "some situations," that case is of no precedential utility for such a proposition.[24]

_____

[24] In his brief, Whorton makes much ado over this Court's statement in *Ferreri* that "a pretrial *Gregg* hearing was *necessary* to prevent the harm that did, in fact, occur in this case," *id.* (emphasis supplied), but his enthusiasm for this out-of-context snippet from the opinion is misplaced. It may very well be that under the extraordinary facts of *Ferreri*, the only practical way the trial court could have avoided the harm that resulted in that case was to hold a pre-trial *Gregg* hearing; but the unique posture of *Ferreri* does not change the fact that the trial court's error in that case was in allowing improperly admitted hearsay evidence to contaminate the trial, not in failing to hold a pre-trial hearing. Put another way, the trial court's refusal to hold a pre-trial hearing may have ultimately led it into reversible error, but our Supreme Court's decision in *Reynolds* precludes us from deeming such refusal itself to be *per se* reversible error. And while our Supreme Court does not provide an explicit rationale for its holding in *Reynolds*, it is easy to see why our appellate colleagues would be leery of imposing an extratextual requirement of a pre-trial hearing in certain cases, infringing on a trial court's ability to consider the necessity of such a pre-trial hearing on a case-by-case basis. It is not the role of an appellate court to micromanage the manner in which a trial court conducts its proceedings. *See Wang v. Liu*, Case No. S12S1485, 2013 WL 1092677, at *2 (Ga. March 18, 2013) (refusing to micromanage trial court's conduct of its proceedings by declining to find that specific findings are required as to enumerated statutory requirements when ruling upon motions to dismiss for forum non conveniens). Finally, it is worth noting that although this Court did direct the trial court in *Ferreri* on remand to hold a pre-trial *Gregg* hearing, this was done as a remedial measure and can in no way be

11

In any event, this case is nothing like *Ferreri*, which involved a staggering amount of child-hearsay statements introduced by the State to form the bulk of its case against the defendant, in addition to "evidence of [the victim's] tender age, inconsistent statements, coaching, [and] involvement of law enforcement [in interviewing the child]."[25] Indeed, the record in the case *sub judice* contains sufficient evidence to support the trial court's determination that the child-hearsay statements in question had indicia of reliability. In stark contrast to the questionable facts in *Ferreri*,[26] the statements here were properly admitted. The initial outcry to the mother followed denials that anyone had *hurt* V. B. but was made after the mother clarified her question as to whether anyone was "messing with" the child. The outcry to the mother's boyfriend was completely spontaneous. The child's remaining statements

understood as undermining our Supreme Court's holding in *Reynolds*.

[25] 267 Ga. App. at 814.

[26] *See id.* at 813-14 (finding insufficient indicia of reliability when circumstances included the following: some questioning conducted by law enforcement; one interview was "chaotic"; some interviews included repeated denials and persistent questioning; child had "just turned three" at first interview; taped interviews took place over seven-month period; child repeatedly said she was tired and wanted to stop during some interviews; child offered repeated tangible and verbal rewards; many statements contradictory; allegations arose against father in context of acrimonious divorce; evidence of possible "coaching" or prompting by child's mother).

were made to two forensic interviewers and a counselor, not to law-enforcement officers; and the recorded statements to the forensic interviewers reflected a degree of spontaneity and credibility. In each statement, V. B. consistently maintained that Whorton touched her on her genitals, never indicating that he did anything else or required her to do anything to him.[27] Additionally, no rewards were given to V. B. in response to incriminating statements, and the interviewers observed nothing to raise concerns as to potential "coaching." Accordingly, the trial court did not abuse its discretion in admitting the child-hearsay statements.[28]

2. Next, Whorton argues that the trial court erred in admitting child-hearsay statements in violation of his Confrontation Clause rights when, although made available to testify, the State did not call the child victim to testify at trial. The State

---

[27] While it is true that in V. B.'s statement to the mother's boyfriend and the Alabama forensic interviewer she indicated that Whorton had touched her during a visit with her father and that she later recanted this allegation during questioning by the counselor, V. B. never recanted the allegation that Whorton touched her while visiting her grandmother, which formed the basis of Whorton's conviction.

[28] *See Hughes v. State*, 297 Ga. App. 581, 583-84 (2) (677 SE2d 674) (2009) (holding that videotaped child-hearsay statements were properly admitted when, unlike the facts in *Ferreri v. State*, 267 Ga. App. 811 (600 SE2d 793) (2004), the statements provided sufficient indicia of reliability).

13

concedes, and we agree, that the trial court erred, but we hold that the error was harmless because the inadmissible evidence was cumulative of admissible evidence.

In *Hatley v. State*,[29] our Supreme Court interpreted the child-hearsay statute and held as follows:

> [W]e now interpret [the child hearsay statute] . . . to require the prosecution to notify the defendant within a reasonable period of time prior to trial of its intent to use a child victim's hearsay statements and to give the defendant an opportunity to raise a Confrontation Clause objection. If the defendant objects, and the State wishes to introduce hearsay statements under [the child hearsay statute], the State must present the child witness at trial; if the defendant does not object, the State can introduce the child victim's hearsay statements subject to the trial court's determination that the circumstances of the statements provide sufficient indicia of reliability.[30]

Nevertheless, the court in *Hatley* went on to explain that despite the State's failure to call the child victim as a witness, any error in admitting testimonial hearsay was harmless when it was cumulative of admissible nontestimonial hearsay.[31]

---

[29] 290 Ga. 480 (722 SE2d 67) (2012).

[30] *Id.* at 483-84 (I).

[31] *See id.* at 484-85 (II).

14

As the State concedes, our Supreme Court's decision in *Hatley* applies to the case *sub judice*.[32] And accordingly, we are constrained to hold that the trial court erred in admitting the child-hearsay statements made during the two forensic interviews because those statements were clearly testimonial.[33] But this error was harmless beyond a reasonable doubt because the statements to the forensic interviewers were cumulative of the admissible nontestimonial statements V. B. made to her mother and her mother's boyfriend—*i.e.*, that Whorton touched the child upon

---

[32] *See Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992) ("In order to ensure that similarly situated defendants are treated similarly and to maintain the integrity of the judicial process while still providing finality, we deem it appropriate to adopt the 'pipeline' approach, that is, that a new rule of criminal procedure . . . will be applied to all cases then on direct review or not yet final.").

[33] *See Hatley*, 290 Ga. at 484-85 (II) (holding that statement to forensic interviewer was testimonial, and defining testimonial statements as those made "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution" (punctuation omitted)).

15

the genitals with his hand.[34] Accordingly, the admission of those statements was harmless.[35]

3. Finally, Whorton argues that the evidence was insufficient to sustain his conviction because it was based entirely upon inadmissible hearsay testimony. But this enumeration of error is without merit based upon our holdings in Divisions 1 and 2, *supra*. Indeed, the child-hearsay statements admitted against Whorton, in which V. B. alleged that he touched her upon the genitals, were sufficient to support his convictions for child molestation and sexual battery.[36]

*Judgment affirmed. Andrews, P. J., and McMillian, J., concur.*

---

[34] *See id.* (holding that child's outcry statement to mother was nontestimonial, and defining nontestimonial). We need not determine whether the statements made to the counselor were testimonial or nontestimonial because these statements were also cumulative of the admissible nontestimonial statements. *See id.* at 485 (II) (declining to decide whether some statements were testimonial or nontestimonial when they were cumulative of admissible nontestimonial statements).

[35] *See id.* at 484-85 (II).

[36] *See id.* at 485 (II) (affirming defendant's conviction for child molestation); *see Copeland v. State*, __ Ga. App. __, __ (737 SE2d 590) (2013) ("[T]he testimony of a single witness is generally sufficient to establish a fact.").