**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**June 24, 2014**

# In the Court of Appeals of Georgia

A14A0512. DAVIS v. THE STATE.

BOGGS, Judge.

Zekemian Davis appeals from his convictions of two counts of child molestation. He contends that the trial court erred by (1) denying his request under *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194; 10 LE2d 215) (1963), for a detailed list of all arrests and convictions for all the State's witnesses; and (2) prohibiting his attempt to voir dire prospective juries about whether testimony from a child would impair their judgment in the case. For the reasons explained below, we affirm.

1. We find no merit in Davis' contention that the trial court erred by failing to order the State to obtain and provide him with information about the criminal records for its witnesses. The record shows that the State provided Davis with a copy of its file, and Davis has not shown that the State obtained the criminal histories and failed

to produce them to him. As Davis' appellate counsel candidly acknowledges, the Supreme Court of Georgia has held that "*Brady* does not impose an affirmative obligation on the prosecution to seek out information for the defense, even if such information is more accessible to the prosecution than to the defense." *Hines v. State*, 249 Ga. 257, 258 (1) (290 SE2d 911) (1982). Consequently, the State is not required to obtain and provide to a defendant the criminal histories of its witnesses. *Lucas v. State*, 274 Ga. 640, 647-648 (12) (555 SE2d 440) (2001). While Davis makes an impassioned plea on appeal for a change in our law on this issue, the doctrine of stare decisis requires that this court "faithfully adhere to the precedents established by the Supreme Court of Georgia." (Citations and footnote omitted.) *Whorton v. State*, 321 Ga. App. 335, 339 (1) (741 SE2d 653) (2013).

2. Davis also contends that the trial court erred by denying his request to ask the following question during general voire dire of potential jurors: "Next question I want to ask is that the testimony - - from hearing testimony from a child, because I'm quite sure it's going to be children testifying, would that impair your judgment against myself, the defendant, or make you feel like that you should go towards the State, or would that impair your judgment in this case?" The trial court responded, "Well, that's kind of prejudging the evidence." When the State objected, the trial

2

court ruled that it would not allow the question and instructed Davis, who was proceeding pro se, to "go to another question." Davis then responded that he had no more questions, and the trial court announced that it would proceed with individual questions.

The Supreme Court of Georgia has summarized the scope of voir dire in Georgia as follows:

Much like cross-examination is the engine of truth in our justice system, voir dire is the engine of selecting a jury that will be fair and impartial. Thus, while recognizing that trial judges must have substantial discretion to oversee jury selection and that this subject is largely governed by state laws and practices, the Supreme Court of the United States has held that due process requires that voir dire be sufficient to allow the parties and the trial court to elicit juror bias. . . .

Georgia has a broadly worded statute describing the scope of voir dire in both criminal and civil cases:

In the examination, the counsel for either party shall have the right to inquire of the individual prospective jurors examined touching any matter or thing which would illustrate any interest of the prospective juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the prospective juror with the parties or counsel therefor, *any fact or*

*circumstance indicating any inclination, leaning, or bias which the prospective juror might have respecting the subject matter of the action or the counsel or parties* thereto, and the religious, social, and fraternal connections of the prospective juror.

OCGA § 15-12-133. This Court has held that OCGA § 15-12-133 allows voir dire questions beyond those that the Constitution would require allowing.

(Citations and punctuation omitted; emphasis in original.) *Ellington v. State*, 292 Ga. 109, 124-125 (7) (b) (735 SE2d 736) (2012). The *Ellington* court also explained that in voir dire,

[t]he line between permissible inquiry into "prejudice" (a juror's fixed opinion that a certain result should automatically follow from some fact, regardless of other facts or legal instructions) and impermissible questions of "pre-judgment" (speculation about or commitment to the appropriate result based on hypothesized facts) can be hazy. Thus, in this area as in other areas of voir dire practice, appellate courts should give substantial deference to the decisions made by trial judges, who oversee voir dire on a regular basis, are more familiar with the details and nuances of their cases, and can observe the parties' and the prospective jurors' demeanor.

Id. at 127 (7) (b). It concluded its review of the relevant law with the admonition:

Finally, as emphasized above, decisions as to what, if any, facts of a particular criminal case beyond the charges and sentencing options qualify as "critical" in terms of risking juror partiality can be difficult and context-specific. The trial court's decision on this point should be given significant deference in appellate review, and it should be reversed only for a manifest abuse of discretion. In holding that trial courts have discretion in allowing such voir dire questions, we do not suggest in any way that such questions should be routine, even in death penalty cases. Questions are appropriate only when *not* asking them runs a real risk that juror partiality driven by the fact at issue will not otherwise be identified in voir dire.

(Citations and footnote omitted; emphasis in original.) Id. at 137 (7) (e).

In this case, the trial court read the indictment to the jury at the beginning of the selection process, and it clearly identified the victim as being a child under the age of sixteen years of age in each of the counts. After swearing the jury, the trial court posed the following questions to all of the jurors: (1) "Have any of you for any reason formed and expressed any opinion in regard to the guilt or innocence of the accused?"; (2) "Have you any prejudice or bias resting on your mind either for against the accused?'" (3) "Is your mind perfectly impartial between the State and the accused?" It also explained at length the need for jurors

5

> to be able to set aside any . . . preconceived ideas, opinions, conclusions, and prejudices and base your verdict solely on the evidence that's admitted during the course of the trial, the law which I will give you in my instructions, and whatever common sense you may have and nothing else. . . . And we just need to find twelve or thirteen jurors who can sit and fairly and impartially weigh the evidence, listen to the law, and reach a fair and impartial verdict.

It also inquired as to whether any jurors felt that they could not do these things.

Additionally, during its general voir dire questions, the State sought to identify jurors who presently or in the past had children under the age of sixteen living in their home, cared for children that were the victim of child molestation or a sexual offense, had a close friend, family member, or themselves been the victim of child molestation or a sexual offense, had a close friend, family member, or themselves been accused of committing child molestation or a sexual offense, or who had a problem with the nature of the case (statutory rape and child molestation) "such that you question your ability to be fair and impartial."

Based upon the reading of the indictment and the general voir questions posed to the jury by both the trial court and the State, we conclude that the trial court did not abuse its broad discretion by denying Davis' question seeking to expose bias based upon a child testifying, because precluding this question did not create "a real risk

6

that juror partiality driven by the fact at issue will not otherwise be identified in voir dire." *Ellington*, supra, 292 Ga. at 137 (7) (e).

*Judgment affirmed. Barnes, P. J., and Branch, J., concur.*