**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A1601. MATABARAHONA v. THE STATE.

RAY, Judge.

After a jury trial, Manuel Matabarahona was convicted of one count of child molestation (OCGA § 16-6-4 (a) (1)). Matabarahona appeals from his conviction and the denial of his amended motion for new trial, contending that the evidence was insufficient to support the jury's verdict and that he was denied the right to confront the child-victim at trial. He also contends that he had ineffective assistance of counsel. For the reasons that follow, we affirm.

1. Matabarahona argues that the evidence was insufficient to support his conviction for child molestation. We disagree.

On appeal from a criminal conviction, we review the evidence in the light most favorable to the jury's verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). The evidence shows that Matabarahona was at a birthday party at a friend's house over Memorial Day weekend in 2008. The eight-year-old victim ("D. A.") and his parents were staying at the house for the weekend. The incident took place on Sunday of that weekend, and many of the adults at the residence, including Matabarahona, had been drinking alcohol that day.

Around lunchtime, D. A.'s mother realized that she had not seen D. A. for a while, so she began to look for him. After searching the majority of the house, she went downstairs and opened a door to a room, whereupon she found Matabarahona sitting on the couch, leaning back, with his pants completely open and his arm around D. A.'s waist. She testified that she "immediately . . . realized something was wrong. [D.A.] had a scared look on his face." She further testified that the lighting in the room had a dimmer-switch and that the lights had been turned down so that the room was dimly lit. After removing D. A. from the room, D. A.'s mother asked him whether Matabarahona had tried to get him to touch him, and D. A. responded "Yes, but I didn't."

D. A.'s mother did not immediately tell her husband what had happened because her husband had been drinking and she feared that he might try to kill Matabarahona. She did not question D. A. any further about the details because "he wasn't forthcoming with the information [and] I didn't want to traumatize him more[.]" After the family returned home, she told her husband what had happened, and they discussed the proper course of action for a few days before contacting the police.

Detective Hicks, who was a detective with the Cherokee County Sheriff's Office at the time of the incident, was assigned to investigate the case. Detective Hicks set up a forensic interview for D. A. with Linda Bishop, a licensed psychotherapist who specialized in forensic interviewing, at the Anna Crawford Children's Center. The interview between D. A. and Bishop was recorded on video. During the interview, D. A. was able to describe Matabarahona's penis to Bishop.

OCGA § 16-6-4 (a) (1) provides that "[a] person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]"

We find that the above evidence was sufficient to support Matabarahona's conviction for child molestation.

2. Matabarahona argues that his trial counsel was ineffective in failing to object to a portion of the State's questioning of a witness at trial. His argument is without merit.

To prevail on an ineffective assistance of counsel claim, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (III), 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). "The likelihood of a different result must be substantial, not just conceivable." (Citation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012). Indeed, "[t]he burden on [Matabarahona] to make this showing is a heavy one, and if he fails to meet his burden of proving either prong, then we do not need to examine the other prong." (Citations and punctuation omitted.) *Robinson v. State*, 329 Ga. App. 562, 563 (765 SE2d 715) (2014). Furthermore, there is a strong presumption that trial counsel's performance fell within the wide range of reasonable professional assistance. *Hartsfield v. State*, 294 Ga. 883, 887 (3) (757 SE2d 90)

(2014). When a trial court determines that a defendant did not receive ineffective assistance of counsel, we will affirm that decision on appeal unless it is clearly erroneous, *Muldrow v. State*, 322 Ga. App. 190, 193 (2) (b) (744 SE2d 413) (2013) (footnote omitted), "but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Hill*.

During the State's direct examination of Detective Hicks, the following exchange occurred:

Q: Now did you ever attempt to make phone calls to the Defendant?

A: We tried on several occasions to contact the Defendant and line up for him to come in and speak with us.

Q: Okay. Is this something you routinely like to do in these types of cases, crimes against children?

A. Yes, it is.

Q: Okay. And were you ever able to set up the interview?

A: We were never able to set up an interview with [Matabarahona].

Matabarahona argues that this particular line of questioning by the State was intended to and did elicit improper testimony regarding the defendant's failure to make a statement to law enforcement during the investigation. We disagree.

5

First, it is important to note the context in which this exchange occurred. Here, the State had been questioning Detective Hicks about the steps he took in investigating the incident. Hicks had just testified about his interview with D. A.'s mother, and he had explained why he did not conduct a formal interview with D. A.'s father. He also acknowledged that he relied on information obtained from D. A.'s forensic interview as a part of his investigation. The State then asked Detective Hicks if he had interviewed anyone else, including Matabarahona. After Detective Hicks testified that his efforts to contact Matabarahona to set up an interview were unsuccessful, the State did not pursue the issue any further. Based on the context of the exchange, we find that the State did not intend to elicit improper testimony regarding Matabarahona's silence.[1]

Furthermore, upon review of Detective Hicks' responses to this line of questioning, there was no indication that anyone successfully made contact with Matabarahona, nor was there any inference that Matabarahona was avoiding such

---

[1] We agree with the State's assertion on appeal that its purpose for the line of questioning was "to convey to the jury that Detective Hicks did try to conduct a fair and even-handed investigation as best he could before moving forward with an arrest warrant against [Matabarahona]."

contact. The State never suggested that Detective Hicks had any direct communication with Matabarahona prior to his arrest.

Second, even if this line of questioning was somehow improper, there must still be prejudice in order to succeed on an ineffective assistance of counsel claim based on the failure to object. "[T]estimony about the defendant remaining silent is not deemed prejudicial if it is made during a narrative on the part of the authorities of a course of events and apparently was not intended to, nor did it have the effect of, being probative on the guilt or innocence of the defendant." (Citation and punctuation omitted.) *Whitaker v. State*, 283 Ga. 521, 524 (3) (661 SE2d 557) (2008). Here, Hicks' testimony was made during Hicks' narrative of the course of his investigation. Nothing about the way it was presented indicates that the State intended it to prejudice the jury. Moreover, the challenged testimony was "not intended to reflect on [Matabarahona's] guilt and it was not probative on that issue. Thus, the [testimony] was not so fundamentally unfair as to deny him due process." (Citation and punctuation omitted.) *Griffin v. State*, 331 Ga. App. 550, 553-554 (2) (a) (769 SE2d 514) (2015). As Matabarahona has failed to show that he was prejudiced by trial counsel's failure to object to the line of questioning, it is unnecessary for us to determine whether trial counsel's performance was deficient.

7

3. Matabarahona claims that he was denied the right to confrontation when D. A. was not called to testify by the State. We find no reversible error.

At the time of trial, child hearsay statements were governed by former OCGA § 24-3-16, which read:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

In *Hatley v. State*, 290 Ga. 480, 482 (722 SE2d 67) (2012), our Supreme Court considered the constitutionality of the child hearsay statute in light of recent Supreme Court Confrontation Clause holdings. The Court upheld the constitutionality of the statute, construing it in such a way that it could survive a Confrontation Clause attack. In order to protect the defendant's right of confrontation under the child hearsay statute,

> the prosecution [must] notify the defendant within a reasonable period of time prior to trial of its intent to use a child victim's hearsay statements and to give the defendant an opportunity to raise a Confrontation Clause objection. If the defendant objects, and the State wishes to introduce hearsay statements under OCGA § 24-3-16, the State must present the child witness at trial; if the defendant does not object, the State can introduce the child victim's hearsay statements

8

subject to the trial court's determination that the circumstances of the statements provide sufficient indicia of reliability.

Id. at 483-484 (I). Our legislature essentially adopted the *Hatley* Court's holding when it enacted the new Evidence Code. Pursuant to OCGA § 24-8-820, the State is now required to notify the defendant in advance of its intention to introduce child hearsay statements and such child must testify at the trial unless the defendant waives the child's testimony.

Immediately after the mother found D. A. in the room with Matabarahona, D. A. told his mother that Matabarahona had tried to get him to touch his penis, but that he did not do it. During the forensic interview with Bishop, D. A. stated that he had not looked at Matabarahona's penis, but was able to describe it as having "hair on it." The forensic interview was recorded, and the DVD was published to the jury during the course of Bishop's testimony. D. A. did not testify.

Matabarahona objected to both the jury's viewing of the interview and D.A.'s mother's statements as being inadmissible hearsay. Objections were lodged both prior to trial and during trial. The trial court ruled that, unless the defense had a different argument during the mother's testimony, it was going to allow D. A.'s statements to his mother to be admitted. Additionally, the trial court admitted the video of D. A.'s

9

forensic interview under OCGA § 24-3-16, finding that "there are sufficient indicia of reliability for it to be played for the jury."

The State argues that the applicable statute to this case is OCGA § 24-3-16, rather than OCGA § 24-8-820, as the crime occurred prior to the enactment of the new Evidence Code . However, even though the crime occurred prior to our Supreme Court's decision in *Hatley*, the Confrontation Clause is a floor below which we cannot go. Therefore, we must apply the procedures announced in *Hatley*.

We have interpreted *Hatley* to merely require the child victim to be present at the courthouse. That way, if the defendant objects to the presentation of the hearsay evidence as a violation of his confrontation rights, the State may call the victim as a witness and still present the hearsay evidence. See *Arbegast v. State*, 332 Ga. App. 414, 422-423 (6) (a) (773 SE2d 283) (2015). If the defendant does not object on Confrontation Clause grounds, however, he is deemed to have waived the objection, and the State may present the hearsay testimony without any violation of the Confrontation Clause if the circumstances of the child's statement provide sufficient indicia of reliability.

Here, it appears from the record that D. A. was present at the courthouse at the time of trial. Matabarahona could have raised a Confrontation Clause objection, but

he failed to do so. Although he raised a hearsay objection, it was confined to the issue of the reliability of the statements. At no time did he raise the issue of his right to confront the child witness. Had he raised the confrontation grounds, the State could have called D. A. to testify. By objecting only on reliability grounds, the State was not required to call D. A. to testify; it was only required to establish that the circumstances of D. A.'s statements provided sufficient indicia of reliability. See *Hatley*, supra at 483-484 (I). The trial court found that the State met this burden.

In light of Matabarahona's failure to raise the issue of confrontation at the trial court, he is deemed to have waived it. See *Leggett v. State*, 331 Ga. App. 343, 346-347 (2) (b) (771 SE2d 50) (2015) ("[t]o preserve an objection as to a specific point, the objection must be on that specific ground in order for this court to consider it") (citation and punctuation omitted).

*Judgment affirmed. Barnes, P. J., concurs and McMillian, J., concurs in judgment only.*