A97A0377. GENTRY v. THE STATE.
(485 SE2d 824)

Judge Harold R. Banke.

After a jury convicted Kim Gentry of rape and kidnapping, the trial court imposed a life sentence plus 20 years. Following the denial of his amended motion for new trial, Gentry raises three errors.

On appeal, the evidence must be viewed in a light most favorable to the verdict, and Gentry no longer enjoys the presumption of innocence. *Cline v. State*, 221 Ga. App. 175 (471 SE2d 24) (1996). Viewed in that light, the State's evidence showed the following. As the victim waited alone on a rainy night for a MARTA bus to take her to work at Krystal's, Gentry drove up and ordered her into his vehicle at gun-

point.[1] Fearing for her safety, the victim complied with his command. After parking in a secluded area, Gentry forced her to have sexual intercourse, continuing to hold the gun during the entire time. At some point during the ordeal, the victim asked Gentry whether he had any sexually transmitted disease. Although Gentry responded in the negative, he is admittedly HIV positive and failed to use a condom.

After threatening to harm her father and her family if she revealed what he had done, Gentry dropped her off at the Krystal's where she worked. When she exited the car, she immediately wrote down Gentry's license tag number. The victim testified that she was too ashamed to report to work so she telephoned her boyfriend from a nearby service station, and eventually took a taxicab to his home. After arriving at her boyfriend's residence, and on the advice of her family, she contacted police and proceeded to the hospital for a physical examination. Dr. Howard D. Sterne, an emergency room physician, prepared a rape kit. Sterne testified that the victim appeared very upset, tearful and frightened for her personal safety. The victim's contemporaneous statements to an assisting nurse, Kathy Lloyd, corroborated the victim's trial testimony.

Detective H. P. Brown, using the tag number written on the back of a MARTA schedule found on the floor of the taxicab, traced the tag to a vehicle belonging to Gentry's mother. After interviewing Gentry's mother, Brown went to Gentry's residence and observed that Gentry appeared to match the victim's description. At Brown's request, Gentry voluntarily accompanied him to the police station to be photographed. Subsequently, from a photo array, the victim identified Gentry. Brown then arrested Gentry for rape, aggravated sodomy, and kidnapping. The victim identified several items found during a search of Gentry's vehicle and residence including clothing worn by Gentry during the crimes, the BB gun Gentry used, and navy nylon material Gentry forced the victim to briefly place over her eyes.

A serologist with the State Crime Laboratory testified that the DNA obtained from the rape kit and the sperm found in the victim's panties statistically matched Gentry's blood.[2] Evidence that Gentry pleaded guilty to attempted rape and possession of a knife during the commission of a crime was admitted as similar transaction evidence. *Held*:

1. Gentry contends that the trial court erred in allowing the State to introduce evidence of his bad character. During direct exami-

---

[1] Although the victim believed the weapon was a nine millimeter pistol, it appears likely that the weapon was a BB gun.

[2] "No more than one in 10 billion persons in either the African-American or Caucasian population that would have the same banding pattern. . . ."

nation, Gentry asserted that the sexual activity at issue was consensual and that they had been dating for about two and one-half weeks. According to his version of events, "his date" had no problem with the sexual activity until a condom inadvertently broke. According to Gentry, when she expressed concern about becoming pregnant, he disclosed that he is HIV positive, whereupon she reacted hysterically. While still on direct, Gentry testified that her reaction scared him because he had just been released from prison and according to his parole stipulations, although he was not required to inform people he is HIV positive, he was required to practice safe sex.

Gentry further claimed that while on a prior dinner date with the victim, he had discussed various aspects of prison life with her. When asked by his counsel whether he informed her he had been imprisoned for attempted rape, Gentry stated, "I don't never tell people I went to prison for attempted rape. I tell people I went to prison for arson."

The State was entitled to cross-examine Gentry about his incarceration for arson because Gentry introduced that topic. *Williams v. State*, 263 Ga. 135, 137 (5) (429 SE2d 512) (1993); *Wilkey v. State*, 215 Ga. App. 354, 355 (450 SE2d 846) (1994). See *Weston v. State*, 216 Ga. App. 806 (456 SE2d 214) (1995). The State, like any other party, has the right to conduct a thorough and sifting cross-examination of a witness. OCGA § 24-9-64; *Sawyers v. State*, 211 Ga. App. 668, 669-670 (4) (440 SE2d 256) (1994).

Gentry's parole from the arson conviction was subject to five conditions. When Gentry falsely stated one parole condition by testifying that he was not required to notify partners that he is HIV positive, the State was entitled to rebut his testimony with State's Exhibit 51, a one-page document entitled "Special Conditions of Parole for H.I.V.-Infected Parolees," showing that Gentry was obligated to disclose to all sex partners that he is HIV positive. *Jones v. State*, 257 Ga. 753, 759 (1) (a) (363 SE2d 529) (1988).

Gentry's contention that the State's inquiry into whether he engaged in unprotected sex with his wife was not preserved for appellate review because he failed to object to that questioning. *Jacobson v. State*, 201 Ga. App. 749, 751 (2) (b) (412 SE2d 859) (1991).

2. The trial court was not required to give a curative instruction regarding Gentry's attempted assault on the prosecutor. During cross-examination, Gentry became upset with a question and retorted, "Now you better leave — you done made me mad. I done told you." After the trial court advised him to calm down and recommended that he step down, Gentry continued, "I told you, man. You better leave me the f- - - alone, partner." Gentry then came down from the witness stand and went after the prosecutor, saying, "I'm going to

get you. I'm going to get you." After deputies successfully interceded without resorting to any violence, the trial court cleared the courtroom. In denying Gentry's motion for a mistrial, the court noted that the deputies handled the situation very professionally and that Gentry calmed down without any show of force.

Notwithstanding Gentry's contention to the contrary, the nature of Gentry's outburst did not warrant the grant of a new trial or prevent him from receiving a fair and impartial trial. See *White v. State*, 255 Ga. 210, 214 (9) (336 SE2d 777) (1985); *Byrd v. State*, 262 Ga. 426 (1) (420 SE2d 748) (1992). To hold otherwise would encourage defendants to engage in tactical courtroom outbursts. Under these circumstances, we find no abuse of the trial court's discretion in denying the motion. *Bell v. State*, 203 Ga. App. 109, 110 (2) (416 SE2d 344) (1992). After denial of the mistrial motion, Gentry failed to request any curative instructions and thereby waived that issue. *Hicks v. State*, 232 Ga. 393, 402 (207 SE2d 30) (1974).

3. Gentry contends that he was deprived of effective assistance of counsel because his attorney failed to have the court produce two material witnesses and failed to object to questioning about his past sexual conduct. At the motion for new trial hearing, Gentry's trial counsel attested that he subpoenaed those two defense witnesses but that they both were uncooperative and refused to answer his questions. When they failed to show up for trial, he decided not to have them arrested. One potential witness, in particular, was both hostile and not credible. Counsel explained that he elected not to object to the State's inquiry into whether Gentry engaged in unprotected sex with his wife because Gentry had admitted to having unprotected sex with the victim.

In order to establish ineffectiveness of trial counsel, Gentry must show not only that his counsel's performance was deficient, but also that the deficient performance prejudiced his defense. *Stephens v. State*, 265 Ga. 120, 121 (2) (453 SE2d 443) (1995). Absent a showing of prejudice, no inquiry need be made into counsel's alleged deficiency. *Trammel v. State*, 265 Ga. 156 (1) (454 SE2d 501) (1995). Moreover, counsel's trial strategy and tactics do not equate with ineffective assistance of counsel. *Nolan v. State*, 204 Ga. App. 170, 172 (3) (419 SE2d 72) (1992).

In light of the overwhelming evidence of guilt, Gentry failed to make the requisite showing of prejudice, even assuming arguendo that his counsel's performance was somehow deficient. *Trammel*, 265 Ga. at 156 (1). The trial court's finding that Gentry was not denied effective assistance of counsel was not clearly erroneous and must be affirmed. *Warren v. State*, 197 Ga. App. 23, 24 (1) (397 SE2d 484) (1990).

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED APRIL 22, 1997.

Before Judge Hunter.

*Emerson Carey, Jr.*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Benjamin M. First, Assistant District Attorneys*, for appellee.