**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 11, 2013**

# In the Court of Appeals of Georgia

A13A0185. WALKER v. THE STATE.

McFADDEN, Judge.

Tyrone Walker appeals his convictions of two counts of rape, four counts of aggravated child molestation, three counts of aggravated sodomy and two counts of child molestation. He argues that the trial court improperly admitted certain child hearsay in violation of his Sixth Amendment right to confront witnesses against him. But Walker affirmatively declined to question the child witness, so his rights were not violated. Walker also argues that he was entitled to a mistrial because the state improperly impeached his expert witness. But the state was attempting to show the witness's bias, not engaging in general impeachment. We therefore affirm Walker's convictions.

When reviewing a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not the reviewing court, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld." (Citations and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

Viewed in this light, the evidence showed that Walker and his estranged wife have five children. After the parents separated, Walker would watch the children while Mrs. Walker worked. One evening when Mrs. Walker returned from work, her eight and nine-year-old daughters disclosed that Walker had engaged in vaginal and anal intercourse with them and had forced them to perform oral sex upon him.

A few days later, pursuant to instructions from the police, she took them to a child advocacy center, where they were interviewed individually by Amy Boney, a forensic interviewer. The interviews were video recorded, and the recordings were

2

played for the jury. The younger victim described the acts her father forced her to perform. The older victim simply said that her "daddy . . . [was] messing with [them] . . . [i]n the wrong place." She circled on anatomical pictures the vaginal area, the buttocks and the mouth to show Boney where Walker had "messed with" her.

Pursuant to a referral from the Department of Family and Children Services, Mrs. Walker took the girls to Connie Schenk, a clinical forensic psychologist, for a psychological evaluation. The younger girl told Schenk that their father showed both girls pornography, describing the content with great clarity. She described some of the sexual acts her father would make her and her sister perform. The older girl told Schenk she did not want to talk about it, but she agreed to write answers to Schenk's questions. She wrote detailed descriptions of the repeated sexual acts her father made her and her sister perform. Schenk also described the girls' symptoms of emotional trauma.

A registered nurse, who was trained as a sexual assault nurse examiner, conducted physical examinations of the girls. She observed symptoms in the girls' genital and anal areas that were consistent with chronic penetration. She observed that the younger girl's hymen was thinner on one side than the other, which was consistent with penetration. The nurse also observed that the girl's anal folds were flattened,

3

which indicated chronic penetration of the area. . The nurse observed a scar on the older girl's vaginal area and that her anal area dilated, observations consistent with the girl having been penetrated.

The victims' older brother, who was 14 at the time of the trial, testified that the younger victim disclosed the abuse to him, and he told her she should tell their mother. The younger victim, who was nine years old at the time of trial, also testified and described the abuse.

1. *Child Hearsay*.

Walker argues that the introduction of his older daughter's out-of-court statements pursuant to the Child Hearsay Statute, former OCGA § 24-3-16, violated his constitutional confrontation rights. Walker's rights were not violated because he was given the opportunity to have the child testify, but he chose not to.

In *Hatley v. State*, 290 Ga. 480, 483-484 (I) (722 SE2d 67) (2012), the Georgia Supreme Court overruled a long line of cases, including *Sosebee v. State*, 257 Ga. 298 (357 SE2d 562) (1987), that had construed the Child Hearsay Statute to require the trial court (1) at the request of either party, to cause a child molestation victim to take the stand before the state rests; and (2) to inform the jury that the court called the child as a witness. Id. at 482 (I). (OCGA § 24-8-820 is a substantially similar child

hearsay statute in the new evidence code.) In *Hatley*, the court ruled that such a procedure does not "pass constitutional muster because it fails to put the onus on the prosecution to put the child victim on the witness stand to confront the defendant." 290 Ga. at 483 (I). Instead,

> to comport with the Confrontation Clause, OCGA § 24-3-16 requires that the child whose statements are at issue not merely be "available to testify" but actually testify at trial, unless the defendant forfeits or waives such testimony, and requir[es] pretrial notice of the [s]tate's intent to use child hearsay statements to allow the defendant to exercise that right.

*Bunn v. State*, 291 Ga. 183,189 (2) (b) n. 4 (728 SE2d 569) (2012). The *Hatley* court directed trial courts to "take reasonable steps to ascertain, and put on the record, whether the defendant waives his right to confront the child witness." (Footnote omitted.) *Hatley*, 290 Ga. at 484 (I). That is precisely what the trial court did here, even without the benefit of the *Hatley* opinion.

The older victim did not testify. The state decided not to call her "due to [her] emotional state," but informed the court that she was available, should the court decide to call her. Defense counsel told the court that he did "not require this," was concerned about her emotional state, and did "not request that she be brought in."

Regardless, in "an abundance of caution," the trial court excused the jury and said that he would have the child brought into the courtroom so that Walker could question her regarding her emotional state. Defense counsel reiterated that he "accept[ed] [the state's] report [of the child's emotional state] . . . . and that [he] did not want to traumatize the child. . . . [He and Walker were] not requesting to call the witness." The court nonetheless brought the child in so that defense counsel could "examine her if [he chose] to. [He could] examine her to see what her state [was] and to satisfy [him]self that things [were] as they [were] represented and make a decision whether [he] want[ed] to place her on the stand and have her to testify in the case." Defense counsel questioned her, asking her whether she wanted to testify and telling her that he had "no intention of calling [her] to force [her] to testify." When he was done questioning the child, defense counsel conferred with Walker and then informed the court that, "[t]he defense does not request the court call her as the court's witness. We do not intend to call her as our witness. I do appreciate the fact that I had a chance to see her and observe this. We are satisfied that she has an enormous reluctance to testify. She has so said. She does appear to be rather tense at the moment."

Not only did Walker fail to object on Sixth Amendment grounds at trial, see *Haywood v. State*, 301 Ga. App. 717, 722 (3) (689 SE2d 82) (2009), but he

6

affirmatively declined the opportunity to question the victim before the jury, thereby "waiv[ing] his right to confront the child witness." (Footnote omitted.) *Hatley*, 290 Ga. at 484 (I). Walker asserts that any waiver was induced by the *Sosebee* line of cases. In essence, he argues that under *Sosebee*, the admission of child hearsay did not violate his right to confront witnesses, so he did not raise a Confrontation Clause objection. But Walker was given the opportunity to question the child and chose not to. Under these circumstances, it is clear that Walker "waive[d] his right to confront the child witness." (Footnote omitted.) *Hatley*, 290 Ga. at 484 (I).

2. *The cross-examination of Walker's expert witness.*

Walker argues that the trial court erred in denying his motion for mistrial because the state improperly impeached his expert witness during cross-examination. Whether to grant a motion for mistrial lies within the trial court's sound discretion. See *Mangrum v. State*, 285 Ga. 676, 679 (4) (681 SE2d 130) (2009). Similarly, "[a] trial court has broad discretion in determining the scope of relevant cross-examination." (Citation omitted.) *Sims v. State*, 280 Ga. 606, 608 (4) (631 SE2d 656) (2006).

Walker presented a psychologist as an expert to give an opinion about the efficacy of the procedures Schenk and Boney used to interview the victims as well

7

as the validity of their opinions. On cross-examination, the prosecutor attempted to show that the expert witness was antagonistic to state government and biased against the state's prosecution of cases like Walker's. He asked the witness, "You seem to have a lot of issues with the state, is that right?" and stated, "Let's talk about your bias." He then asked the expert whether he had been charged criminally for failure to report sexual abuse of a child. The witness responded that the charge had been dead-docketed. The prosecutor then asked whether the witness had been required to complete a diversion program, and the witness said he had, and he had not been convicted of anything. The prosecutor went on to ask the witness if he understood that his role in the case was to be objective.

Walker argues that the question about the charge for failing to report child sexual abuse amounted to improper impeachment because former OCGA § 24-9-84.1 only allowed impeachment with a criminal conviction. (OCGA § 24-6-609 of the new evidence code concerns impeachment by evidence of conviction of a crime.) But "the prosecutor's cross-examination of this witness did not constitute impeachment of the witness by proof of a criminal conviction; rather, the prosecutor was cross-examining the witness concerning the criminal charge[] . . . in order to reveal possible biases, prejudices, or ulterior motives of the witness as they might relate to his testimony on

8

direct examination." (Citations and footnote omitted.) *Harrison v. State*, 259 Ga. 486, 489 (3) (384 SE2d 643) (1989). See also *Smith v. State*, 276 Ga. 263, 265 (2) (577 SE2d 548) (2003). ("But [defendant] was not trying to impeach the witness on general credibility grounds; he was attempting to show the witness'[s] bias.") Consequently, the prosecutor could question the expert about the charge even though it did not result in an adjudication of guilt. See *Smith*, 276 Ga. at 265 (2).

"The [s]tate, like any other party, has the right to conduct a thorough and sifting cross-examination of a witness." (Citations omitted.) *Gentry v. State*, 226 Ga. App. 216, 218 (1) (485 SE2d 824) (1997). The trial court did not abuse its discretion in allowing this cross-examination or in denying the motion for mistrial.

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*