**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 18, 2013**

# In the Court of Appeals of Georgia

A13A0910. THE STATE v. DAGUE.

PHIPPS, Chief Judge.

Bryan Coleman Dague was indicted for committing two offenses against P. C.: (i) child molestation, by touching her vaginal area; and (ii) aggravated child molestation, by placing his mouth on the child's sex organ. At trial, the state invoked the Child Hearsay Statute and introduced evidence of P. C.'s out-of-court accusations about Dague, and a jury found him guilty as charged. Judgment of conviction was entered thereon.

The trial court granted Dague's motion for new trial, because it determined that the child hearsay had been admitted in violation of Dague's Sixth Amendment right

to confront P. C. The state appeals the grant of a new trial.[1] Because the record shows that Dague waived his right to confront P. C., such that his Sixth Amendment right to confront his accuser was not violated, we reverse.

Evidence at trial showed the following. P. C.'s mother made arrangements with her cousin for P. C. to live during the 2009 - 2010 school year at that cousin's residence. Accordingly, through most of her kindergarten year, five-year-old P. C. lived with that cousin, the cousin's two daughters, and the cousin's husband. In November 2009, Dague, the 18-year-old son of the husband, moved into the residence. P. C. and the younger daughter shared a bedroom; initially, the girls slept in bunk beds with P. C. on the lower one; when the beds were later disassembled, the girls slept in them as twin beds. Dague and the older daughter each had their own bedroom. In May 2010, P. C. moved back home with her mother.

P. C.'s mother testified that, one morning the following February (2011), she and P. C. talked with the cousin by phone. After the phone call, P. C. told her mother that when she was living at the cousin's residence, Dague often came into her

---

[1] See OCGA §§ 5-7-1 (a) (8); 5-7-2 (c); *State v. Caffee*, 291 Ga. 31, 33 (2) (728 SE2d 171) (2012) ("In 2011, the Georgia General Assembly amended OCGA § 5-7-2 to eliminate the certificate requirement when the State appeals the superior court's grant of a new trial in favor of a criminal defendant.").

bedroom and touched her vaginal area. P. C. told her mother that, during those times, she would pretend to be asleep.

On February 7, 2011, P. C.'s mother reported P. C.'s allegations to police. A psychotherapist who specialized in sexual abuse conducted a forensic interview of P. C. The interview was audio-video recorded, and the recording was authenticated at trial by the psychotherapist, then played for the jury. During the interview, six-year-old P. C. said that on more than one occasion, Dague had come into her bedroom, approached her as she lay on her bed, pulled down her panties, and put his tongue on her vaginal area. P. C. also said that on more than one occasion, Dague had come into her bedroom, approached her as she lay in her bed, pulled down her panties, and touched her vaginal area with his fingers and/or his penis. P. C. described that Dague had sometimes brought with him a "bottle" and used his finger to transfer some of its contents – which she described was like hair grease or hair conditioner – onto her vaginal area before touching that area with his penis.

P. C. was examined in February 2011 by a nurse practitioner, who was qualified at trial to testify as an expert in the area of child sexual assault. The nurse practitioner opined that P. C.'s vaginal area was "normal." She explained, however, that "a normal exam is completely consistent with [P. C.'s] disclosure" because, given

3

the amount of time that had passed between the reported sexual incidents and the date of the examination, any touching of the vaginal area would likely not have left any marks, and any cuts to that area would likely have healed.

A police detective assigned to the case interviewed Dague on February 15, 2011. The interview was audio-video recorded, and played for the jury. During the interview, 20-year-old Dague recounted moving into his father's residence in November 2009, when he was nearly 19 years old, and living there until Summer 2010. Dague recalled P. C. living there, too, but denied ever inappropriately touching her.

Dague took the stand and denied P. C.'s allegations, as well as the acts described in both counts of the indictment.

P. C. was seven years old at the time of the trial. She was brought to the courthouse before the trial began, but neither side called her to testify.

1. Although its sufficiency is not specifically contested in this appeal, the evidence presented at trial and summarized above, when viewed in the light most

favorable to the prosecution, was sufficient to authorize a rational trier of fact to find Dague guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. We turn to the state's contention that Dague was not entitled to a new trial.

Dague claimed on motion for new trial that, pursuant to *Hatley v. State*,[3] which case was decided after he was convicted in 2011, his Sixth Amendment right to confront P. C. had been violated. Consequently, Dague argued, the trial court had erred in admitting evidence of P. C.'s out-of-court statements to her mother and to the forensic interviewer, that his trial counsel had rendered ineffective assistance by not cross-examining P. C. and by not pursuing a strategy that "[Dague's] father might have been the one" who molested P. C.; and that the trial court had erred in denying his motion for a directed verdict of acquittal.

---

[2] See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (instructing that, on review of the sufficiency of the evidence to support a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in original); *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.") (citation and punctuation omitted).

[3] 290 Ga. 480 (722 SE2d 67) (2012).

After a hearing on the motion for new trial, the trial court entered an order on October 19, 2012. Therein, it determined that, under the pipeline rule,[4] *Hatley* was applicable, then ruled,

> The objection to the constitutionality of the child hearsay statute was properly preserved for appeal by trial counsel's Motion in Limine regarding the same. While defendant clearly was on notice of the State's intent to introduce the child hearsay, and trial counsel waived the opportunity to have the child testify, he did so in light of a now-overturned procedure. The Court cannot find a valid waiver of defendant's rights under the Confrontation Clause. There exists insufficient properly admitted evidence to sustain the jury's verdict. Defendant's Motion for New Trial is granted.

On appeal, the state challenges the grant of a new trial to Dague, which was based on the trial court's finding of a violation of the Confrontation Clause. The state claims that defense counsel not only failed to object on that ground, but also conceded that the defense had deliberately waived confronting P. C. at the trial for

---

[4] See *Taylor v. State*, 262 Ga. 584, 586 (422 SE2d 430) (1992) (adopting the pipeline rule, such that "a new rule of criminal procedure . . . will be applied to all cases then on direct review or not yet final") (footnote omitted).

6

strategic reasons. For reasons that follow, we agree with the state that Dague was not entitled to a new trial.[5]

The Child Hearsay Statute in effect at the time of Dague's September 2011 trial provided:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[6]

---

[5] Because the trial court granted Dague's motion for new trial on a special ground instead of the general grounds, we review that ruling de novo. See *State v. James*, 292 Ga. 440, 441 (1) (738 SE2d 601) (2013) ("While the first grant of a new trial on the general grounds is reviewed for abuse of discretion (see OCGA § 5-5-50), we review de novo the trial court's first grant of a new trial on a special ground involving a question of law.") (citations omitted); *O'Neal v. State*, 285 Ga. 361 (677 SE2d 90) (2009).

[6] OCGA § 24-3-16 (2011). The similar version of the Child Hearsay Statute, adopted as part of the new Georgia Evidence Code, is codified at OCGA § 24-8-820. See *Walker v. State*, 322 Ga. App. 158, 160 (1) (744 SE2d 349) (2013). However, because Dague's trial occurred before January 1, 2013, the former version of the Child Hearsay Statute applies in this case. See *In the Interest of M. C.*, 322 Ga. App. 239, 242 (3) (744 SE2d 436) (2013).

In *Sosebee v. State*,[7] the Supreme Court of Georgia construed that statutory language so as to require the following:

> [I]f the prosecution invokes the Child Hearsay Statute to introduce out-of-court declarations by the alleged victim, *the court shall, . . . at the request of either party, cause the alleged victim to take the stand*. The court shall *then* inform the jury that it is the *court* who has called the child as a witness, and that both parties have the opportunity to examine the child. The court shall *then* allow both parties to examine and cross-examine the child as though the Child Hearsay Statute has not been invoked.[8]

That way, the *Sosebee* Court explained, jurors would not "resent the defendant for forcing the child to take the stand and undergo cross-examination."[9]

But *Sosebee* and its progeny were recently overruled in *Hatley v. State*.[10] The appellant in *Hatley* was convicted of committing aggravated child molestation, aggravated sodomy, and two counts of sexual battery against C. C., a person under

---

[7] 257 Ga. 298 (357 SE2d 562) (1987).

[8] Id. at 299 (emphasis supplied); see *Hatley*, supra at 482 (I) (explaining holding in *Sosebee*, supra).

[9] *Sosebee*, supra; see *Hatley*, supra (explaining rationale underlying *Sosebee*, supra).

[10] Supra at 483 (I).

age sixteen.[11] In the underlying trial, C. C.'s mother, police officers, and a forensic interviewer were allowed to testify about what C. C. had told them.[12] C. C. was in the courthouse and available to testify, but was not called to the witness stand by the state.[13] Hence, on appeal, the appellant in *Hatley* contended that the trial court had erred by failing to declare the Child Hearsay Statute unconstitutional, and to require the state to present C. C. as a witness.[14] The Supreme Court of Georgia held in *Hatley* that "the Child Hearsay Statute, as construed by this Court in *Sosebee*, . . . and in other appellate cases, cannot pass constitutional muster because it fails to put the onus on the prosecution to put the child victim on the witness stand to confront the defendant," in violation of the Confrontation Clause.[15]

However, the *Hatley* Court went on to explain that the statute could survive a Confrontation Clause attack provided that:

---

[11] Id. at 480.

[12] Id. at 481.

[13] Id. at 481-482.

[14] Id. at 482.

[15] Id. at 483.

the prosecution . . . notif[ies] the defendant within a reasonable period of time prior to trial of its intent to use a child victim's hearsay statements and . . . give[s] the defendant an opportunity to raise a Confrontation Clause objection. If the defendant objects, and the State wishes to introduce hearsay statements under OCGA § 24-3-16, the State must present the child witness at trial; if the defendant does not object, the State can introduce the child victim's hearsay statements subject to the trial court's determination that the circumstances of the statements provide sufficient indicia of reliability. The trial court should take reasonable steps to ascertain, and put on the record, whether the defendant waives his right to confront the child witness.[16]

Accordingly, this court, citing *Bunn v. State*,[17] recognized in *Walker v. State*:[18]

[T]o comport with the Confrontation Clause, OCGA § 24-3-16 requires that the child whose statements are at issue not merely be "available to testify" but actually testify at trial, *unless the defendant forfeits or waives such testimony*, and requir[es] pretrial notice of the [s]tate's intent to use child hearsay statements to allow the defendant to exercise that right.[19]

---

[16] Id. at 483-484 (I).

[17] 291 Ga. 183, 189 (2), n. 4 (728 SE2d 569) (2012) (explaining the holding in *Hatley*, supra).

[18] Supra.

[19] Id. at 160 (1) (emphasis supplied).

10

In *Walker*, Walker argued that the trial court had improperly admitted certain child hearsay in violation of his Sixth Amendment right to confront one of his accusers.[20] But this court found that argument unavailing, concluding:

> Not only did Walker fail to object on Sixth Amendment grounds at trial, but he affirmatively declined the opportunity to question the victim before the jury, thereby waiving his right to confront the child witness. Walker asserts that any waiver was induced by the *Sosebee* line of cases. In essence, he argues that under *Sosebee*, the admission of child hearsay did not violate his right to confront witnesses, so he did not raise a Confrontation Clause objection. But Walker was given the opportunity to question the child and chose not to. Under these circumstances, it is clear that Walker waived his right to confront the child witness.[21]

The record in the instant case convinces us that Dague waived his right to confront P. C. Prior to trial, Dague filed a motion in limine, stating that he believed that the state was planning, pursuant to OCGA § 24-3-16, to introduce evidence of P. C.'s out-of-court statements. Dague pointed out that the trial court had not yet made a determination, as statutorily required, that "the child is available to testify in the proceedings and . . . that the circumstances of the statement provide sufficient

---

[20] Id.

[21] Id. at 161 (1) (citations and punctuation omitted).

11

indicia of reliability."[22] Additionally, in a separate paragraph within that motion, Dague made the claim: "OCGA § 24-3-16 is unconstitutional and infringes upon Defendant's Sixth Amendment right to confront witnesses." Thereafter, in another motion, Dague requested a pretrial hearing to determine whether there was sufficient indicia of reliability to render any such statements admissible under OCGA § 24-3-16. At a pretrial hearing, Dague argued only that the circumstances of P. C.'s out-of-court statements failed to provide sufficient indicia of reliability under *Gregg v. State*.[23] At the end of that hearing, the trial court ruled from the bench that P. C.'s statements to her mother and to the forensic interviewer were admissible.

But "[e]ven if OCGA § 24-3-16 authorizes the admission of such evidence as an evidentiary matter, it may still be inadmissible as a violation of the accused's rights under the Confrontation Clause."[24] Accordingly, "[t]here is a distinct difference

---

[22] OCGA § 24-3-16 (2011).

[23] 201 Ga. App. 238, 240-241 (3) (b) (411 SE2d 65) (1991) (setting out factors which the court may consider when considering whether the circumstances of the statement demonstrate sufficient indicia of reliability).

[24] *Bunn*, supra (citations omitted).

between a challenge to the admission of evidence based upon the Confrontation Clause and that based upon an exception to the hearsay rule."[25]

Here, Dague pursued pretrial (unsuccessfully) his argument that P. C.'s out-of-court statements failed to satisfy the reliability requirement of the Child Hearsay Statute. Although Dague included in his motion in limine a conclusory claim that the Child Hearsay Statute was unconstitutional as violative of his right to confront witnesses, he thereafter neither advanced any argument in support thereof,[26] nor did he elicit any distinct ruling from the trial court on whether the Child Hearsay Statute was unconstitutional.[27] And by further failing to lodge at trial any Confrontation

---

[25] *Johnson v. State*, ___ Ga. ___, ___ (2) (___ SE2d ___) (2013) (Case No. S13A1298, decided October 21, 2013) (punctuation omitted), quoting *Walton v. State*, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004).

[26] See generally *In re D. H.*, 283 Ga. 556, 557-558 (3) (663 SE2d 139) (2008) ("To properly raise a constitutional challenge to a statute, the party attacking the statute must show three things: (1) [t]he statute or the particular part or parts of the statute which the party would challenge must be stated or pointed out with fair precision; (2) the provision of the Constitution which it is claimed has been violated must be clearly designated; and (3) it must be shown wherein the statute, or some designated part of it, violates such constitutional provision.") (punctuation and footnotes omitted); see *Allen v. State*, 263 Ga. 60 (2) (428 SE2d 73) (1993) (noting that the constitutionality of the Child Hearsay Statute, as codified at OCGA § 24-3-16, has been "repeatedly upheld").

[27] See generally *Nathans v. Diamond*, 282 Ga. 804, 808 (2) (654 SE2d 121) (2007) ("[B]ecause neither the trial court's discussion [in the transcript] nor its

13

Clause objection, Dague waived the issue.[28] Dague did not, for example, object on the ground that, unless P. C. took the stand, the admission of her out-of-court statements would violate his Confrontation Clause rights; Dague did not object to the procedure established in *Sosebee* – "the court shall, . . . at the request of either party, cause the alleged victim to take the stand,"[29] which procedure was disapproved in *Hatley*.[30]

---

written order mention the . . . constitutional issues, it does not appear that those . . . issues were distinctly ruled on by the trial court. Accordingly, those issues are not preserved for appeal."), cited in *Jenkins v. State*, 284 Ga. 642, 644 (1), n. 1 (670 SE2d 425) (2008); *Dye v. State*, 205 Ga. App. 781 (1) (423 SE2d 713) (1992); *Buckler v. DeKalb County Board of Comm.*, 299 Ga. App. 465, 469 (3) (683 SE2d 22) (2009) (determining that appellants waived any alleged constitutional error by failing to elicit a ruling by the trial court on constitutional issue).

[28] See *Hatley*, supra; *Bunn*, supra; *Walker*, supra; see also *Johnson*, supra (explaining the "distinct difference" between Confrontation Clause and other challenges to hearsay); *Battles v. State*, 290 Ga. 226, 232 (5) (719 SE2d 423) (2011) (explaining that, generally, "[a]lthough a party does not waive an error by failing to object to admission of evidence after a motion in limine is denied, this rule cannot be invoked to preserve a *different*, [even] if perhaps related, error") (citations omitted; emphasis supplied); *Ellis v. State*, 287 Ga. 170, 172 (2) (695 SE2d 35) (2010) (explaining that "[o]nce the trial court has addressed a party's motion or objection *and has issued a ruling*, the party adversely affected need not then further object or except to the trial court's ruling in order to preserve the issue for appeal") (emphasis supplied).

[29] *Sosebee*, supra at 299.

[30] See generally *Taylor*, supra at 586 (3) ("Application of the [pipeline] rule to a pending case will, of course, depend on the preservation of the issue for appellate review.").

14

Rather, as was confirmed by Dague's trial lawyer when he took the stand at the hearing on Dague's motion for new trial, the defense had chosen, as a matter of trial strategy, not to confront seven-year-old P. C. in front of the jury. The lawyer recounted that he had been concerned about the reliability of P. C.'s out-of-court statements, and thus had sought before trial to exclude the child's outcry to her mother and the child's disclosures to the forensic interviewer. But when that effort failed, the lawyer testified, "as a matter of trial strategy our focus was more on the mother and the circumstances surrounding the child's outcry than upon placing the child on the stand." As the lawyer revealed,

> My concern – I've – I've had to put children on the stand before, especially in Juvenile Court, and my experience is that's a very difficult thing to do. It's fraught with peril. And I thought that – I mean, I wanted to try and keep it out, fought to keep it out. But since [the trial court] ruled it was coming in, I felt it was enough to work with on the child statement without muddying the waters and risking putting her on the stand.

As the lawyer recalled,

> [P. C.] was here at the courthouse. I spoke with her very briefly. I can't remember if it was outside or in the courtroom. [The prosecutor] had her in a room down the hall. And I know that they brought her up to the

15

witness stand and – but I did not go into any kind of lengthy questioning of the child.

The lawyer had calculated that cross-examining the child was "somewhat risky. And . . . our better – the strategy at the time was to try to go after the mother and the family circumstances. My concern was, is that I didn't want the child reaffirming on the stand what she says in the forensic interviews. I felt like there was enough to work with in the interviews that it gave me some openings." The lawyer also had a "concern at the time . . . I didn't want to come across as beating the child up." Furthermore, the lawyer recounted, he had examined the discovery from the state and had discerned no material variations amongst P. C.'s allegations. Had there been, he added, "that probably would have changed my strategy."

The record shows that any pretrial objection Dague may have had that the Child Hearsay Statute itself was unconstitutional as violative of his right to confront was abandoned.[31] Furthermore, not only did Dague fail to raise a Confrontation Clause objection at trial, he deliberately declined the opportunity to question P. C.

---

[31] See *Battles*, supra; *In the Interest of D. H.*, supra; *Taylor*, supra; *Buckler*, supra; *Dye*, supra.

before the jury, "thereby waiving his right to confront the child witness."[32] Contrary to Dague's claim on motion for new trial, *Hatley* did not apply retroactively such that admission of P. C.'s out-of-court statements was improper.[33] The trial court thus erred in granting Dague a new trial, based on its determination that child hearsay was admitted in evidence in violation of Dague's Sixth Amendment right to confront the child.[34]

3. Finally, we note that Dague asserts in his brief that "the grounds in his motion for new trial are interwoven into the trial court's analysis and consequent ruling with its findings of fact and conclusions at law." Dague further states that the trial court's order granting his motion for new trial was "silent as to not excluding any

---

[32] *Walker*, supra (citation and punctuation omitted).

[33] See *McClure v. Kemp*, 285 Ga. 801, 802-803 (684 SE2d 255) (2009) (reiterating that application of the pipeline rule so as to analyze a claim of error under a new procedural rule "is dependent upon whether the claim was preserved for appellate review"), citing *Taylor*, supra. Given our holding, we need not reach which of P. C.'s out-of-court statements, if any, were nontestimonial. See generally *Hatley*, supra at 482-485 (I, II) (discussing whether statements are nontestimonial or testimonial).

[34] See *Bunn*, supra (OCGA § 24-3-16 requires that the child actually testify, "unless the defendant forfeits or waives such testimony"); *Walker*, supra (where defendant affirmatively declined the opportunity to question the victim before the jury, defendant waived his right to confront the child witness).

17

of the said grounds as its basis for same." Dague does not go so far, however, as to request remand for an express ruling from the trial court. And indeed, remand is unwarranted.

(a) Contrary to Dague's claim on motion for new trial, the trial court committed no error in admitting evidence of P. C.'s out-of-court statements to her mother and to the forensic interviewer.[35] Hence, Dague made *no* showing that the jury's verdict was based on improperly admitted evidence (as the order granting new trial implies).

(b) Thus, contrary to Dague's claim on motion for new trial, the trial court did not err by denying his motion for a directed verdict of acquittal.[36]

---

[35] See Division 2, supra.

[36] See Division 1, supra; *Joyner v. State*, 280 Ga. 37, 38 (1) (622 SE2d 319) (2005) ("The test set forth in *Jackson v. Virginia*, [supra] is the proper standard of review when the sufficiency of the evidence is challenged via a motion for directed verdict of acquittal.") (citation omitted); see also *State v. Jackson*, __ Ga. __ (__ SE2d __) (2013) (Case No. S13A1213, decided September 23, 2013) (reversing grant of new trial on the ground that the evidence was legally insufficient under *Jackson v. Virginia*, supra). Cf. *White v. State*, 293 Ga. 523, 524-526 (2) (__ SE2d __) (2013) (vacating denial of the motion for new trial, which motion raised the general grounds, and remanding for trial court to apply proper standard to the general grounds and to exercise its discretion and sit as a "thirteenth juror").

18

(c) Dague failed to show on motion for new trial that his trial counsel rendered ineffective assistance of trial counsel.[37] Dague did not call P. C. as a witness at the hearing on motion for new trial;[38] nor did Dague demonstrate, as he argued, that the trial strategy employed was unreasonable.[39]

*Judgment reversed. Ellington, P. J., and Branch, J., concur.*

---

[37] See *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984); see also *Lewis v. State*, 291 Ga. 273, 282 (7) (731 SE2d 51) (2012) (reiterating that a remand to the trial court for an evidentiary hearing on an ineffectiveness claim is not necessary where "we can determine from the record that the two-prong test for ineffectiveness cannot be met") (citation and punctuation omitted).

[38] See *Welch v. State*, 318 Ga. App. 202, 206-207 (2) (733 SE2d 482) (2012) (rejecting claim that trial counsel was ineffective for failing to question at trial child molestation victim, where child did not testify at the new trial hearing and thus there was no showing whether her trial testimony would have been favorable to defendant, and where counsel's decision not to call child victim at trial was reasonable strategy). Only Dague's trial lawyer testified at the hearing on motion for new trial.

[39] See *Jones v. State*, 282 Ga. 306, 308 (6) (647 SE2d 576) (2007) ("It cannot be said that counsel was ineffective simply because another attorney might have placed more or a different emphasis on the evidence.") (citation omitted); *Allen*, supra at 62 (4) ("Absent a strong showing that counsel's actions were not reasonable, we will presume that these strategies were not deficient.") (citation omitted); *Welch*, supra; see generally *Rickman v. State*, 277 Ga. 277, 280 (2) (587 SE2d 596) (2003) (noting that "in making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law, and that only in a rare case would it be ineffective assistance by a trial attorney not to make an objection that would be overruled under prevailing law") (punctuation and footnotes omitted).

19