**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 12, 2020**

# In the Court of Appeals of Georgia

A19A1670. SIMPSON v. THE STATE.

REESE, Judge.

Dalston Simpson appeals from an order of the Superior Court of Gwinnett County denying his amended motion for new trial after a jury found him guilty of criminal damage to property in the second degree and criminal gang activity.[1] On appeal, Simpson contends that the evidence was insufficient to establish that the fair market value of the damaged property exceeded $500 and that the trial court erred in allowing the State to introduce evidence of gang activity in violation of the Confrontation Clause of the Sixth Amendment. For the reasons set forth infra, we affirm Simpson's conviction for criminal gang activity, vacate the conviction for

---

[1] See OCGA §§ 16-7-23 (2); 16-15-4 (a); 16-15-3 (1) (J).

second-degree damage to property, and remand for further proceedings consistent with this opinion.

This case arose out of a house party that took place in the late hours of May 25, 2014, and early morning hours of May 26, 2014, in Lilburn. Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that the 19-year-old hostess, having recently finished up her freshman year of college, invited some of her friends from Parkview High School to "catch up[ and] hang out" at her father's house. At some point, the hostess noticed an uninvited group of five or six young men. The hostess recognized one of the men from Parkview, and let him know that he could stay but that the others, who were identified at trial as members or hangers-on of the gang "1800 Migos" and/or "Black Migo Gang," also known as "BMG,"[3] needed to leave.

An argument ensued in front of the house between a male friend of the hostess and the gang members. One gang member pointed an AK-47 rifle at the hostess's

---

[2] See *Johnson v. State*, 304 Ga. 610, 612 (1) (b) (820 SE2d 690) (2018).

[3] According to the evidence at trial, 1800 Migos was a smaller set of younger members of "BMG." BMG fell within the broader Blood Nation.

2

friend. Simpson had a nine-millimeter handgun, and at least one other gang member also had a handgun.

The friend got punched, and a "brawl" ensued. The friend dropped his iPhone during the fight, and one of the gang members picked it up and kept it. According to Corporal James Evans of the Gwinnett County Police Department, who had spent seven years on the Gang Task Force and who testified as an expert in criminal street gangs, a common scheme was to identify someone with an expensive smart phone, start a disagreement, and hit or push the victim so that the phone dropped out of his hand. Another gang member would then pick up the phone while the victim was trying to defend himself and while a crowd was swarming in to watch the fight.

After seeing the AK-47, partygoers took cover inside the house. Simpson picked up a chair or other item and threw it into a front window. Someone used an iron plant holder from the porch to "beat" on the front door. Meanwhile, Simpson was yelling "1800 Migos." Other gang members yelled, "We're the Migo Gang. We get in anywhere." As the gang members left, one of them fired shots into the air from a vehicle.

The jury found Simpson not guilty of four of the six charges against him, but found him guilty of second-degree criminal damage to property, and criminal gang

activity. After a hearing, the trial court denied Simpson's amended motion for new trial. This appeal followed.

1. Simpson argues that the evidence was insufficient to support his conviction for second-degree criminal damage to property. We agree.

"[E]ven absent a motion for a directed verdict, a criminal defendant may challenge the sufficiency of the evidence."[4] Here, the hostess, the daughter of the homeowner, testified that the iron-frame door had been custom-made and that it cost roughly $5,000 when her parents purchased it prior to moving into the home. As of the time of trial, the door had not been replaced, but the hostess testified that she had "plexiglass over it currently," which she thought cost "around $300."

As the State now concedes, this evidence was insufficient to establish that the fair market value of the property damage exceeded $500.

> [U]nder OCGA § 16-7-23, the value of damage to the property of another may be established by several means. For example, a lay witness may give opinion testimony as to such value, subject to stating the factual predicate on which the opinion is based or otherwise showing that he or she had the opportunity to form a reliable opinion. Alternatively, the cost of an item may be sufficient to show the value of damage to everyday items if supported by other evidence showing the

---

[4] *Griffith v. State*, 286 Ga. App. 859, 868 (10) (e) (650 SE2d 413) (2007).

before and after condition of the item. Additionally, evidence of the cost to repair an item may also suffice. Significantly, numerous Georgia cases on the subject of value of the damage focus on the tangible damaged property itself. This makes perfect sense because the crime in its essence is "criminal damage to property," not total expenses of the owner in connection with property damage.[5]

However, the evidence was sufficient on the lesser included offense of criminal trespass[6] because the hostess testified as to the extent of the damage, and there was evidence that Simpson had picked up a small chair or similar item from the porch and thrown it at the front of the house, breaking a window.[7] Defense counsel conceded this point after she moved for a directed verdict on the gang activity charge against Simpson: "I'm not going to argue about the criminal damage to property because I believe one of the witnesses said he threw a chair through a window[.]"

---

[5] *Wynn v. State*, 344 Ga. App. 554, 556 (811 SE2d 53) (2018) (citations and punctuation omitted).

[6] See OCGA § 16-7-21 (a).

[7] See *Wynn*, 344 Ga. App. at 559.

Accordingly, we vacate Simpson's conviction for second-degree criminal damage to property and remand for the trial court to impose a conviction for the lesser included offense of criminal trespass.[8]

2. Simpson contends that the trial court erred by allowing the State to introduce improper evidence of alleged criminal offenses committed by gang members, in violation of Simpson's right to confront witnesses against him under the Sixth Amendment.

As an initial matter, we agree with the State that Simpson's motion in limine failed to preserve this issue for appellate review, but not because Simpson did not make a contemporaneous objection at trial.[9] In arguing the motion in limine, Simpson contended only that the gang evidence improperly brought his character into issue.[10]

---

[8] See *Wynn*, 344 Ga. App. at 560 ("[A] defendant is on notice of all lesser crimes which are included in the crime charged as a matter of law.").

[9] See *Whitehead v. State*, 287 Ga. 242, 248-249 (2) (695 SE2d 255) (2016) ("[O]ur unique repetitive objection rule for similar transaction evidence should be abandoned, and the rules for objecting to that type of evidence should conform to our ordinary rules for objecting to evidence. [A] defendant should not be required to raise and have overruled before the jury the very same objection to similar transaction evidence that already was raised and ruled on by the trial court.").

[10] See OCGA § 24-4-404 (b).

6

Simpson did not raise a constitutional challenge. As we held regarding a challenge to the admission of evidence under the child hearsay statute:

> [E]ven if [former] OCGA § 24-3-16 authorizes the admission of such evidence as an evidentiary matter, it may still be inadmissible as a violation of the accused's rights under the Confrontation Clause. Accordingly, there is a distinct difference between a challenge to the admission of evidence based upon the Confrontation Clause and that based upon an exception to the hearsay rule.[11]

Thus, because Simpson did not raise a Confrontation Clause argument at trial, we review only for plain error.[12]

To show plain error, Simpson must show that the error: (1) was not affirmatively waived; (2) was clear and not open to reasonable dispute; (3) affected his substantial rights; and (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings. Under the third prong of this test, Simpson must

---

[11] *State v. Dague*, 325 Ga. App. 202, 208 (2) (750 SE2d 476) (2013) (citations and punctuation omitted) (reversing grant of motion for new trial because the defendant had waived his right to confront the child witness).

[12] See OCGA § 24-1-103; *Lupoe v. State*, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016).

"make an affirmative showing that the error probably did affect the outcome below. Satisfying all four prongs of this standard is difficult, as it should be."[13]

OCGA § 16-15-9 provides:

For the purpose of proving the existence of a criminal street gang and criminal gang activity, the commission, adjudication, or conviction of any offense enumerated in paragraph (1) of Code Section 16-15-3 by any member or associate of a criminal street gang shall be admissible in any trial or proceeding. Evidence offered under this Code section shall not be subject to the restrictions in paragraph (22) of Code Section 24-8-803[14].

In 2017, after Simpson's trial and conviction, the Supreme Court of Georgia issued an opinion in *State v. Jefferson*.[15] The Court held that "OCGA § 16-15-9 is unconstitutional on its face to the extent that it authorizes the admission of the convictions of non-testifying non-parties as evidence of a criminal street gang."[16]

---

[13] *Lupoe*, 300 Ga. at 243 (4) (citations and punctuation omitted).

[14] Paragraph 22 generally provides an exception to the hearsay rule to allow the admission of felony convictions, "*but not including*, when offered by the state in a criminal prosecution for purposes other than impeachment, *judgments against persons other than the accused*." OCGA § 24-8-803 (22) (emphasis supplied).

[15] 302 Ga. 435 (807 SE2d 387) (2017).

[16] Id. at 437.

8

Specifically, the statute unconstitutionally allowed the State to confront the defendant "with the record of another criminal prosecution, with which he had no connection and the evidence in which was not given in his presence."[17]

Simpson cites to the page of the trial transcript which includes the following exchange between the prosecutor and Corporal Evans:

> Q. [I]n your gang investigations, can you give us an idea of how many arrests — not getting into specific individuals, but how many arrests of BMG members you've made over the years?
> A. [A]re we talking about repeats too?
> Q. Yeah.
> A. Okay. I'd put it around 200.

Evans also explained that gang members were often aspiring musicians and would "commit crimes [to] have enough money to pay for a studio, [file] all the copyrights and so forth[.]"

Simpson does not cite any testimony, however, and we have not found any in our review, regarding the *convictions* of non-testifying non-parties.[18] "Even assuming that [Evans's] expert testimony included some impermissible hearsay — although

---

[17] Id. at 441.

[18] See *Jefferson*, 302 Ga. at 437.

experts may sometimes rely on and testify about otherwise inadmissible hearsay regarding their opinions [under] OCGA § 24-7-703 — much of his testimony was based on his personal knowledge."[19] Evans's testimony was admissible under OCGA § 16-15-9 and not prohibited by the Confrontation Clause under *Jefferson*. Simpson has thus not shown error, much less error that is clear and not open to reasonable dispute. Accordingly, we affirm his conviction for criminal gang activity.

*Judgment affirmed in part and vacated in part and case remanded with direction. Miller, P. J., and Rickman, J., concur.*

---

[19] *Lupoe*, 300 Ga. at 243 (4).